**SEATTLE MARINE FISHING SUPPLY CO., Nordby Supply Co., Redden Net Co., Fisheries Supply Co., Lummi Fisheries Supply Co., Nets, Inc., Tacoma Marine Supply, Astoria Marine Supply, and Englund Marine Supply, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 83–10–01552.**

United States Court of International Trade.

Jan. 26, 1988.

George R. Tuttle, P.C., (George R. Tuttle, Gary C. Cooper, and George R. Tuttle III, San Francisco, Cal., on the motion), for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City (Sheila N. Ziff, Washington, D.C., on the motion), for defendant.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Plaintiffs, Seattle Marine Fishing Supply Co., et al. (plaintiffs), commence this action

pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (1982), contesting the Department of Commerce, International Trade Administration's (ITA) administrative review of its antidumping investigation of fish netting from Japan. *Fish Netting of Manmade Fibers From Japan,* 37 Fed. Reg. 11560 (1972). Plaintiffs seek judicial review, pursuant to Rule 56.1 of the rules of this Court, of the ITA's final results of the administrative review published in *Fish Netting of Man–Made Fibers From Japan; Final Results of Administrative Review of Antidumping Finding,* 48 Fed. Reg. 43210 (1983), claiming the ITA's final administrative review determination was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence on the record, or otherwise not in accordance with law. Upon review of the record and the papers submitted by the parties, the Court finds the ITA's determination was neither arbitrary, capricious, nor an abuse of discretion, and was supported by substantial evidence on the record and was otherwise in accordance with law. Plaintiff's motion is denied and this action is dismissed.

## FACTS

The following facts do not appear to be in dispute. Plaintiffs are United States importers of fish netting, including the same merchandise at issue in this action. On June 9, 1972, the Department of Treasury (Treasury) issued a dumping finding with respect to fish netting from Japan. *Fish Netting of Manmade Fibers From Japan,* 37 Fed.Reg. 11560 (1972). On or about January 2, 1979, the United States Customs Service (Customs) submitted an exporter's sales price questionnaire to Momoi Company, Inc., San Diego, California, a company related to Momoi Fishing Net Manufacturing Co., Ltd. of Japan (Momoi). Momoi is an exporter and manufacturer of fish netting of manmade fiber. The questionnaire requested updated sales data covering the time period September 1, 1976 through March 31, 1978 in order to determine exporter's sales price. The accompanying cover letter stated: "If the requested

data is not supplied within 30 days, the Customs Service will proceed with the antidumping appraisements based on the best information available." Document No. 1 of the Administrative Record of the first administrative review, *Seattle Marine Fishing Supply Co. v. United States,* Court No. 83–10–01552 (A.R.R.).

On January 2, 1980, authority for administering the antidumping and countervailing duty laws was transferred from Treasury to the ITA, pursuant to the Trade Agreements Act of 1979, 19 U.S.C. 1677(1) (1980). On March 28, 1980, the ITA published notice it was conducting administrative reviews of all outstanding antidumping findings and orders. The appended list of antidumping orders included the dumping finding of June 9, 1972, covering fish netting of manmade fibers from Japan. The notice included the following:

Pursuant to section 751(a)(1) of the Tariff Act of 1930, as amended (93 Stat. 175, 19 U.S.C. 1675(a)(1), this notice is to advise the public that the Department of Commerce is conducting an administrative review of findings of dumping under the Antidumping Act, 1921, to determine the foreign market value and United States price of each entry of merchandise subject to the finding and included within the determination (i.e., for each finding, all entries with dates of purchase or export, as appropriate, occuring subsequent to the period covered by the last published master list, or, as a minimum, the last 12–month period); and to determine the amount, if any, by which the foreign market value exceeds the United States price.

Section 751(a)(1) provides that administrative review take place at least once during the 12–month period beginning on the anniversary of the date of publication of all findings under the Antidumping Act, 1921, or orders under title VII of the Tariff Act of 1930, as amended (93 Stat. 150). Current findings and their dates of publications are listed in the Appendix to this notice. The administrative review of the findings listed in appendix will be completed by the anniversary in 1981 of

the date of publication of the finding. Questionnaires are being, or will be, delivered to affected foreign manufacturers, producers or exporters. The responses will be analyzed and then, in accordance with section 353.53(d) of the Commerce Regulations (19 CFR 353.-53(d), 45 FR 8205), the parties to the proceeding can request disclosure of the non-confidential information (or, pursuant to an administrative protective order, of confidential information) on the basis of which the determination will be made. Where disclosure is requested, it will be made generally about 30 days prior to the date a notice of review is published. Written views may be presented, and an opportunity to present oral views may be requested, by any party to whom disclosure was made. After providing an opportunity for comment by interested parties, the Department of Commerce will publish in the Federal Register the results of such review, together with notice of any antidumping duties to be assessed and estimated antidumping duties to be deposited.

This notice is published pursuant to section 751(a)(1) of the Act (93 Stat. 175, 19 U.S.C. 1675(a)(1)).

*Administrative Review of Antidumping Determinations,* 45 Fed.Reg. 20511, 20511–512 (1980).

In August of 1980, the ITA submitted questionnaires to Momoi and other exporters of fish netting from Japan, requesting sales data for the period April 1, 1978 through May 31, 1980. The letter to Momoi, dated August 6, 1980, requested submission of the answers to the ITA "within 30 days from the date the questionnaire is received" and warned Momoi that "[a]ny undue delays or lack of response may result in [the ITA] proceeding with appraisements based on the best information available." A.R.R. at doc. 56.

A letter dated September 17, 1980 and addressed to the ITA from Momoi was received by the ITA. The letter referred to the questionnaire it had received from the ITA and responded it had previously replied with a request for a one month extension of time due to the absence of its manager who would complete the questionnaire when he returned October 10, 1980. A.R.R. at doc. 71. The ITA denies having any such knowledge, on the record, of receiving this letter.

By cable, dated November 18, 1980, to the U.S. Embassy in Tokyo, the ITA communicated its receipt of 17 out of 43 responses to the questionnaires and only two of the 26 non-responding firms had been granted extensions, both of which were also overdue. The ITA requested advice on the intentions of the nonresponding firms. A.R.R. at doc. 110. By cable, dated November 19, 1980, the U.S. Embassy in Tokyo advised the ITA it was closing the files in connection with ten of the 26 nonresponding firms, including Momoi. The cable indicated that Momoi's response was due on September 27, 1980, and that the embassy had "followed up" on the matter on October 31, 1980. A.R.R. at doc. 111.

On May 5, 1981, the ITA published its first preliminary results of the administrative review for the periods 1976–1978 and 1978–1980 for fish netting of manmade fibers from Japan which covered 21 manufacturers and 25 exporters. The notice stated 35 firms, including Momoi, either "refused to respond or provided inadequate responses of to the questionnaires. The notice continued the ITA used the best information available for those nonresponding firms. This information consisted of third country sales to Canada of fish netting as the best evidence of fair market value to compare to the export sales price to the United States. *Fish Netting of Manmade Fibers From Japan; Preliminary Results of Administrative Review of Antidumping Finding,* 46 Fed.Reg. 25118 (1981).

On June 1, 1981, the U.S. Embassy received Momoi's answers to the 1979 Treasury questionnaires for the period September 1, 1976 through March 31, 1978, and to the ITA questionnaires for the period December 1, 1977 through May 31, 1980. A.R.R. at doc. 212. On June 12, 1981, the ITA held a hearing over the preliminary results of the administrative review of the

fish netting from Japan. At this hearing, the Director of the Office of Compliance of the ITA stated the position of the ITA that where firms had made a good faith effort to respond to the questionnaires, but had responded inadequately or could show mitigating circumstances for failure to respond, supplemental responses would be accepted for filing. In the case of nonresponding companies failing to demonstrate a good fair effort to submit information, the Director stated the ITA would use the best information available pursuant to 19 U.S.C. § 1677e(b), which provides as follows:

**(b) Determinations to be made on best information available**

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e(b) (1980).

On June 19, 1981, the ITA sent out notices to the domestic attorneys representing the interested parties in the above proceedings and listed, pursuant to its stated intentions in the June 18 hearing, those firms which it considered to have made good faith efforts to furnish responses and those it considered nonresponsive, which included Momoi. The notices also stated if the attorneys wanted the ITA to reconsider its categorization for any firms on the second, nonresponsive list, arguments and supporting information must be furnished by June 26, 1981. A.R.R. at doc. 255. Momoi responded with its post-hearing brief on June 26, 1981. A.R.R. at doc. 265.

Plaintiffs' counsel met with the ITA on June 29, 1981 to discuss Momoi's claim of a good faith effort to respond to the questionnaires in a timely fashion. Following this meeting, on July 6, 1981, Momoi, through its counsel, submitted to the ITA its list of all types of fish netting sold by the Japanese exporters in the U.S., the home market, and the third countries. A.R.R. at doc. 276. A supplemental submission to the ITA was made on July 9, 1981. A.R.R. at doc. 279.

By letter dated July 28, 1981, the ITA advised Momoi, as follows:

On June 12, 1981, the Department of Commerce held a hearing concerning the preliminary results of the review of the antidumping finding on fish netting of manmade fibers from Japan. Subsequent to the hearing the Department has decided to permit all firms to submit additional information to correct any inadequacies in their response to antidumping questionnaires issued by the U.S. Customs Service in prior years. For the period covered by the recent Commerce questionnaire the Department will permit those firms which it considers to have made a "good-faith" effort to respond to correct any inadequacies in those responses. The Department will notify you of the inadequacies it has found. Firms which the Department considers to have been non-responsive to the recent Commerce questionnaire will not be permitted to submit additional information. For these firms the Department will base its assessments on the best information available, including its analysis of supplemental information provided by firms under the guidelines established by this letter.

You may correct inadequacies in your responses to any questionaire(s) previously issued by Customs [1976–78 period]. The Department has determined that your firm was non-responsive to the recent Commerce questionnaire covering the period [April 1, 1978] through May 31, 1980, and will therefore accept no further information pertaining to that period.

A.R.R. at doc. 291. The ITA, on August 20, 1981, also advised Momoi of the deficiencies in Momoi's response to the Customs questionnaire for the April 1, 1976 through March 31, 1978 time period. A.R.R. at doc. 315.

On April 17, 1982, Momoi submitted additional data correcting the deficiencies for the 1976–1978 period, as requested by the

ITA. Momoi also submitted data for the period April 1, 1978 through May 31, 1981. A.R.R. at doc. 423. Momoi subsequently petitioned the ITA, pursuant to 19 U.S.C. § 1675(b) for revocation of the antidumping order on April 23, 1982. The ITA rejected Momoi's petition on April 9, 1982.

On December 27, 1982, the ITA published its revised preliminary results of the administrative review of the fish netting investigation. The publication stated certain firms were permitted to file additional responses, but concerning the nonresponsive firms, the ITA would use the best information available to determine the assessment rates. The notice also stated Momoi's petition for revocation was rejected for failure to meet the criteria set forth in 19 C.F.R. § 353.54. *Fish Netting of Man-Made Fibers From Japan; Revised Preliminary Results of Administrative Review of Antidumping Finding and Tentative Determination to Revoke in Part,* 47 Fed.Reg. 57546 (1982).

On January 28, 1983, the ITA held a section 751 administrative review hearing on the proposed revised preliminary dumping margins, in which the Compliance Director again reiterated the ITA's position it would not consider Momoi's submissions of data for the 1978 through 1980 period because the data was untimely submitted. It was repeated the best information available would be used.

On September 22, 1983, the ITA published the *Fish Netting of Man-Made Fibers from Japan; Final Results of Administrative Review of Antidumping Finding,* 48 Fed.Reg. 43210 (1983), in which it was determined Momoi would be subject to 8.08% dumping margins for the time periods September 1, 1976 through March 31, 1978 and April 1, 1978 through May 31, 1980.

## BACKGROUND

Plaintiffs filed their amended complaint on January 11, 1984 seeking relief in the form of a judgment declaring the ITA's published notice of the final results of the administrative review of the antidumping findings, 48 Fed.Reg. 43211 (1983), in connection with fish netting from Japan, to be unsupported by substantial evidence on the record or otherwise not in accordance with law. Plaintiffs specifically enumerated, in their amended complaint, a number of reasons why the final results of the administrative review, including the dumping margins and any antidumping duties assessed as the result thereof, were "illegal, null and void."

Plaintiffs now file their motion for judgment on the agency record, pursuant to rule 56.1 of the Rules of this Court, again urging the Court to find the administrative review of the antidumping order of fish netting of man-made fibers from Japan void and remand the matter to the ITA for consideration of certain submissions of information by Momoi previously rejected by the ITA as untimely filed.

Plaintiffs, in their motion papers, refer to the various contentions listed in their complaint and declare they "abandon all claims other than those relating to the submission of answers by Momoi for the calculation of dumping margins for the period of December 1, 1977 through May 31, 1980." Memorandum In Support of Plaintiff's [sic] Motion for Judgment on the Administrative Record at 4, *Seattle Marine Fishing Supply Co. v. United States,* Court No. 83–10–01552. Considering this sole claim, plaintiffs now hold three major contentions.

Plaintiffs first contend the ITA's section 751 final administrative review (§ 751 review) results are void because the certain cost submissions provided by Momoi were refused consideration by the ITA, contrary to plaintiffs' interpretation of the "best information otherwise available" rule of 19 U.S.C. § 1677e and 19 C.F.R. § 353.51 and relevant case law. Plaintiffs also argue the dumping margins determined by the ITA in the § 751 review are void because the ITA did not provide proper notice of the initiation of that review.

Finally, plaintiffs conclude their contentions urging that the Trade Act of 1979 and the principles of due process require the ITA to consider Momoi's responses to the questionnaires. Plaintiffs continue that it was arbitrary, capricious, and an abuse of

discretion for the ITA to accept only a portion of Momoi's responses as well as to establish the distinction between "responders" and "non-responders", and that the ITA erroneously penalized the importer by collecting duties which were not applicable to the imported merchandise.

Defendant defends the ITA's determination as reasonable, supported by substantial evidence on the record and otherwise in accordance with law. Specifically, defendant maintains the record shows Momoi had received the Customs and ITA questionnaires and had been notified the best information available would be used if the responses were not timely made. Momoi, defendant urges, filed its responses ten months later and following the publication of the preliminary results. Defendant states the ITA's decision to reject this untimely filed information is in accordance with 19 U.S.C. § 1677e(b). Defendant also argues plaintiffs' interpretation of 19 C.F.R. § 353.51 is misguided and that this regulation does not provide for receipt of additional information where no timely response was submitted.

Defendant also disagrees with plaintiffs' belief the final results are void due to insufficient notice. Defendant bolsters this view by arguing plaintiffs are barred from raising this issue for the first time in their motion pursuant to 28 U.S.C. § 2637(d), requiring the exhaustion of administrative remedies. In the alternative, defendant claims plaintiffs have failed to show they were harmed by the ITA's failure to publish the exact date the review would commence, especially when plaintiffs had actual notice of, and participated in, the administrative review without objection.

Finally, defendant counters plaintiffs' last arguments by denying plaintiffs were deprived of their due process rights and states that plaintiffs had actual notice of the administrative review, full opportunity to participate, and the ITA's decision to distinguish the interested parties and disallow late responses was a reasonable exercise of the agency's discretion.

## DISCUSSION

The first issue before the Court is whether or not the ITA's decision to reject Momoi's alleged untimely filed submission of responses to the questionnaires is in contravention to 19 U.S.C. § 1677e(b) of the antidumping law, and therein unreasonable, unsupported by substantial evidence on the record, and not in accordance with law. Momoi challenges the results of the final administrative review stating the ITA's failure to consider these cost submissions renders the review void.

The Court, in reviewing challenges to administrative reviews governed under 19 U.S.C. § 1675, must sustain the ITA's determination unless it is found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). It has been established the administrative agency "has broad discretion in the enforcement of the trade laws and ... [its] 'decision does not depend on the "weight" of the evidence, but rather on [its] expert judgment ... based on the evidence of the record.'" *Manufacturas Industriales de Nogales, S.A. v. United States,* —— CIT ——, ——, 666 F.Supp. 1562, 1567 (1987) (quoting *Matsushita Electric Industrial Co., Ltd. v. United States,* 750 F.2d 927, 933 (Fed.Cir.1984)).

The Court is guided in weighing the evidence by the "substantial evidence test" which "restricts the scope of the Court's review of the agency record. Much deference is given to the agency's interpretation [in the administration of the antidumping law]. As long as the interpretation is sufficiently reasonable, it will be upheld. Furthermore, it need not be the only reasonable interpretation." *Hercules, Inc. v. United States,* —— CIT ——, ——, 673 F.Supp. 454, 463 (1987).

Substantial evidence has been observed to encompass:

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Substantial evidence 'is something less than the weight of the evidence, and the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'

*Matsushita Electric Industrial Co. v. United States,* 750 F.2d 927, 933 (Fed.Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); and quoting *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) respectively).

The focal point of the litigants' first contention is 19 U.S.C. § 1677e and its corresponding regulation, 19 C.F.R. § 353.51. Section 1677e provides as follows:

**§ 1677e. Verification of information**

**(a) General rule**

Except with respect to information the verification of which is waived under section 1673b(b)(2) of this title, the administering authority shall verify all information relied upon in making a final determination in an investigation. In publishing such a determination, the administering authority shall report the methods and procedures used to verify such information. If the administering authority is unable to verify the accuracy of the information submitted, it shall use the best information available to it as the basis for its determination, which may include the information submitted in support of the petition.

**(b) Determinations to be made on best information available**

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e (1982). Section 353.51 provides, in pertinent part, as follows:

**§ 353.51 Verification of information; use of best information available.**

(a) Information upon which a final determination is based shall be verified. The methods and procedures used to ver-

ify information in a particular case shall be published in the FEDERAL REGISTER in the "Notice of Affirmative Final Antidumping Determination" or "Notice of Negative Final Antidumping Determination," as appropriate.

(b) Whenever information cannot be satisfactorily verified, or is not submitted in a timely fashion or in the form required, the submitter of the information will be notified and the affected determination will be made on the basis of the best information then otherwise available which may include the information submitted in support of the petition. An opportunity to correct inadequate submissions will be provided if the corrected submission is received in time to permit proper analysis and verification of the information concerned; otherwise no corrected submission will be taken into account. Where a party to the proceeding refuses to provide requested information, that fact may be taken into account in determining what is the best available information.

19 C.F.R. § 353.51(a)–(b) (1982).

 Plaintiffs first argue the language of § 1677e(b) should be interpreted to define a "timely submission" as one "made in sufficient time to allow the ITA to verify the information contained therein, in order to use that information in the publication of a final determination." Memorandum in Support of Plaintiffs' Motion for Judgment on the Administrative Record at 21, *Seattle Marine Fishing Supply Co. v. United States,* Court No. 83–10–01552. If this is true, according to plaintiffs, then under § 1677e(b) Momoi's submissions, filed within a sufficient enough period of time for the ITA to verify the information, were timely submitted and therefore improperly rejected by the ITA. Plaintiff adds that Momoi's information submitted, for the sake of argument, in a timely manner, became the "best information available" for the ITA to use in its determination. Building their argument on these premises, plaintiffs state the ITA did not verify Momoi's "best information available" submissions, contrary to § 1677e and the regula-

tion, and therefore has no statutory or regulatory basis to exclude the information and rely on the ITA's choice of "the best information available."

Plaintiffs have mistakenly believed they have filed a timely response to the ITA's questionnaires and due to this fault much of their arguments fail. The record is clear Momoi filed its responses to the questionnaires far beyond the 30 day limit the questionnaire cover letter unequivocally stated was the time period within which to file. Even if the Court were to take into consideration the alleged letter Momoi claims to have sent the ITA requesting a time extension from the September 1980 deadline to October 1980, this still puts Momoi's sole response at a filing date over seven months beyond a possible extended cut off date and almost one month after publication of the notice of the preliminary results of the review. This notice, published on May 5, 1981, stated certain firms, of which Momoi was included, either "failed to respond or provided inadequate responses" to the questionnaires and therefore the ITA used the best information otherwise available for these firms.

The ITA is charged with the duty of administering the antidumping laws. When the ITA conducts administrative reviews of antidumping investigations, it requests responses to questionnaires from interested parties affected by the review. Because of statutory time limitations, the ITA provides a limited time period within which the parties may file their responses. In this case, the ITA specifically warned Momoi that it had 30 days to respond and "[a]ny undue delays or lack of response may result in [using] the best information available." A.R.R. 56. In such a situation, when the time period expires and no response is submitted, "the ITA must refuse to consider untimely submitted information and instead rely on the best information available." *Ansaldo Componenti, S.p.A. v. United States,* — CIT —, —, 628 F.Supp. 198, 204 (1986). *See also Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556 (Fed.Cir.1984); *UST, Inc. v. United States,* 9 CIT 352 (1985). The statute is also clear when "a party or any other per-

son refuses or is unable to produce information requested in a timely manner and in the form required ..." the ITA shall use the best information otherwise available. 19 U.S.C. § 1677e(b).

In *Ansaldo,* the court noted the administering agencies had never received a response from the petitioner by the requested dates. The court went on to declare:

This fact, in and of itself, provides sufficient basis to sustain Commerce's use of the best information available. Section 751 reviews are conducted and must be completed within specific time frames. The procedures involved in these reviews make it imperative the requested information be submitted within a period that allows [the ITA] sufficient time for adequate analysis and comment while still meeting statutory deadlines. As in the present case, when the information requested is not timely provided, [the ITA] has no choice but to proceed with its review and reach its determinations using the best information available.

*Ansaldo,* — CIT at —, 628 F.Supp. at 205.

The United States Court of Appeals for the Federal Circuit has also commented on the unique time limitations imposed on the administering agencies. The court observed the best information rule:

is set within the extremely short statutory deadlines which the Congress built into the new antidumping law and the resultant lack of time which the [agency] has to wield its little-used subpoena power. Thus cooperation by the parties to the investigation is essential, as well as diligence by the [agency] staff, to gather the data needed for an accurate determination. Noncooperation by parties or other persons may, in the absence of [agency] time to pursue judicial compliance, be penalized, at least in the eyes of those parties or persons, by the [agency's] mandatory use of whatever other best information it may have available. In short, one may view the best information rule, as the [agency] urges, as an investigative tool, which that agency may wield as an informal club over recalci-

trant parties or persons whose failure to cooperate may work against their best interest.

*Atlantic Sugar,* 744 F.2d at 1560 (footnotes omitted).

It is clear the ITA had informed Momoi of the time frame in which it was to respond or subject itself to the best information otherwise available. The record displays the ITA followed statutory procedure and Momoi was afforded its chance to respond to the questionnaires, which it failed to do. Therefore, the ITA was not unreasonable or otherwise acting contrary to law when it refused to accept Momoi's untimely filed responses and instead relied upon the best information otherwise available.

Similarly, plaintiffs' argument the submissions were filed in time for the ITA to verify the information and therefore constitute a timely submission is speculative at best and can not stand in light of this Court's above analysis. The administering agency has great discretion in carrying out the antidumping laws. The fact that plaintiffs are able to determine for Commerce what constitutes a proper time for verification, what constitutes a "timely submission", and what should be accepted, despite the statute, is interesting, at best. Plaintiffs' submissions have been found to be untimely filed, and the ITA's decision to reject these late responses is supported by the record, and in accordance with law.

■ Plaintiffs challenge the ITA's decision on what constitutes the best information available and argues its submitted information was the best information available. The issue is not, as plaintiffs would argue, whose information becomes the best information *otherwise* available, but whether or not evidence on the record supports the ITA's decision. *See Atlantic Sugar,*

744 F.2d at 1561. Review of the record clearly displays plaintiffs' refusal to comply with filing deadlines. The ITA then used Canadian sales data as the best information which was otherwise (other than the untimely submitted information) available. This was a reasonable exercise of the ITA's discretionary powers, was supported by the record, and was not contrary to law. *See Ansaldo,* —— CIT at ——, 628 F.Supp. at 205–206.

■ Plaintiffs' second contention is the ITA's determined dumping margins for Momoi are void because the ITA failed to properly inform the parties of the initiation of the administrative review. Plaintiffs rely solely on *Hide–Away Creations Ltd. v. United States,* 6 CIT 310, 577 F.Supp. 1021 (1983), for support of their argument. In *Hide–Away,* the Court determined the mere statement of intent by the ITA, found in the published notice of the final investigation results, to conduct an administrative review within the 12–month period without specifying any dates was insufficient to provide interested parties with actual notice of the initiation of a review pursuant to 19 U.S.C. § 1675.[1] Plaintiffs maintain, as was found in *Hide–Away,* they were prejudiced by this lack of proper notification and therefore the ITA's determination of dumping margins should be found void.

Plaintiffs argue the instant case and that found in *Hide–Away* are analogous. The Court disagrees. The facts in *Hide–Away* display the notice of intent to initiate an administrative review was published not in a separate notice but in the published notice of the final results of the investigation in language stating "'the Department *intends to conduct an administrative review within twelve months of the publication of the countervailing duty order.'*"

---

1. Section 1675, in pertinent part, provides:

 **§ 1675. Administrative review of determinations**

 (a) **Periodic review of amount of duty**

 (1) **In general**

 At least once during each 12–month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this

 subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, *after publication of notice of such review in the Federal Register,* shall—

 (B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty....

 19 U.S.C. § 1675(a)(1)(B) (1982) (emphasis added).

*Hide–Away,* 6 CIT at 312–13, 577 F.Supp. at 1023. The facts in the instant action, by contrast, show the ITA published a separate notice in the Federal Register entitled *Administrative Review of Antidumping Determinations.* This notice included the following language:

SUPPLIMENTARY INFORMATION: Pursuant to section 751(a)(1) of the Tariff Act of 1930, as amended (93 Stat. 175, 19 U.S.C. 1675(a)(1)), this notice is to advise the public that the Department of Commerce is conducting an administrative review of findings of dumping . . . .

Section 751(a)(1) provides that administrative review take place at least once during the 12-month period beginning on the anniversary of the date of publication of all findings . . . . Current findings and their dates of publications are listed in the Appendix to this notice. The administrative review of the findings listed in appendix will be completed by the anniversary in 1981 of the date of publication of the finding. Questionnaires are being, or will be, delivered to affected foreign manufacturers, producers or exporters.

\* \* \* \*

Appendix
Antidumping Orders

| Finding dates | Commodity | Country |
|---|---|---|

\* \* \* \*

6/09/72............Fish netting............Japan

*Administrative Review of Antidumping Determinations,* 45 Fed.Reg. 20511, 20511–512 (1980) (emphasis added). Here specific dates have clearly been published to afford interested parties a time frame within which they may comply.

Other points of distinction between *Hide–Away,* and the present case include the fact that in *Hide–Away* the affected

petitioner had no actual notice of the initiation of the administrative review. The court in *Hide–Away* was strenuous in noting the following:

[T]he procedural error here by [the] ITA in failing to publish a proper notice in the Federal Register prior to the initiation of the first administrative review *resulted in substantial prejudice to plaintiffs, i.e.,* the late filing and exclusion from administrative review of evidence directly relevant to Confecciones' zero benefit status. *Absent publication in the Federal Register of the date that the first administrative review would be initiated, there were no other means prescribed by the statute for plaintiffs to have ascertained the actual date of the commencement of the first section 751 review.*

*Hide–Away,* 6 CIT at 318, 577 F.Supp. at 1027 (emphasis added). Such is not the case before the Court. The facts before this Court indicate plaintiffs had sufficient notice an administrative review was initiated and additionally show plaintiffs maintain they had asked for an extension of time in which to answer the questionnaires.

■ Defendant argues this Court should not entertain this argument because plaintiffs failed to raise this contention in the administrative proceedings and the statutory requirement of exhaustion of administrative remedies operates to bar the Court from considering the issue. Defendant continues 19 U.S.C. §§ 1516a(a)(2)[2] and (b)(1)(B)[3] set forth that "in actions involving challenges to determinations made by

---

2. Section 1516a(a)(2) sets forth:

(2) **Review of determinations on record**
(A) **In general**
Within thirty days after the date of publication in the Federal Register of—
(i) notice of any determination described in clause (ii), (iii), (iv), or (v) of subparagraph (B), or
(ii) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B), an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed

by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.
19 U.S.C. § 1516a(a)(2) (1982).

3. Section 1516a(b)(1)(B) provides:

(b) **Standards of review**
(1) **Remedy**
The court shall hold unlawful any determination, finding, or conclusion found—
\* \* \* \* \* \*
(B) in an action brought under paragraph (2) of subsection (a) of this section, to be unsupported by substantial evidence on the record, or otherwise not in accordance with law.
19 U.S.C. § 1516a(b)(1)(B) (1982).

the ITA under 19 U.S.C. § 1675, only matters raised during such proceedings upon which the agency had an opportunity to make a determination are reviewable in this Court." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Administrative Record at 25, *Seattle Marine Fishing Supply Co. v. United States,* Court No. 83–10–01552. Defendant points further to 28 U.S.C. §§ 2640(b)[4] and 2637(d)[5] emphasizing the legislative intent to require exhaustion of administrative remedies. Defendant supports its arguments with numerous cases.

Plaintiffs, in their reply brief, state they do not dispute defendant's arguments with respect to the statutory requirements requiring exhaustion of administrative remedies, but argue the present situation should fit under an exception to this rule. Plaintiffs refer to *Philipp Bros., Inc. v. United States,* — CIT —, 630 F.Supp. 1317 (1986), to support the proposition that "the court 'shall, *where appropriate,* require the exhaustion of administrative remedies.'" *Philipp Bros.,* — CIT at —, 630 F.Supp. at 1320 (quoting 28 U.S.C. § 2637(d) (1982)).

The court, in *Philipp Bros.,* also referred to *Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 583 F.Supp. 607 (1984), a case which this court has recognized stands for the following on exhaustion of administrative remedies:

A litigant must exhaust administrative remedies before it may raise a claim in a civil action. However, where a new claim is asserted outside of the administrative record by a party who participated in the administrative proceeding, and the claim is purely legal and does not add factual data to the record, it is within the Court's discretion to consider the claim. The Court must bear in mind any prejudice to the parties which would re-

sult from the failure to raise the issue in the proceedings below.

*Hercules, Inc. v. United States,* — CIT —, —, 673 F.Supp. 454, 476 (1987) (referring to *Rhone Poulenc,* 7 CIT at 136, 583 F.Supp. at 611).

From the record it appears plaintiffs are attempting to raise a factual argument which should have been raised at the administrative level. Plaintiffs clearly could have raised this alleged improper notice issue at the administrative level, especially if they were so prejudiced as they now claim. There appears to be no recognized exception within which plaintiffs' claim may be placed. As mentioned above, the record shows plaintiffs were not prejudiced by the alleged lack of proper notice. With no prejudice apparent to the parties which would result from the failure to raise the issue in the proceedings below, the Court determines it will not exercise its discretion to entertain this particular issue.

Plaintiffs' last argument complains the ITA acted in an unreasonable and arbitrary manner in rejecting Momoi's untimely submitted information and as a result denied Momoi its constitutional right to due process of law by not having an opportunity to be heard and to present its information. Plaintiffs maintain that while the ITA accepted Momoi's submission of information for the 1976–1978 period of investigation, and determined other firms, which responded, albeit incorrectly or inadequately; to be responsive and able to amend their submission with additional information, the ITA arbitrarily, capriciously, and with abuse of discretion, rejected Momoi's information for the 1978–1980 period of investigation; and distinguished Momoi as a non-responsive party, unable to have its untimely filed submissions accepted. Plaintiffs conclude the ITA's rejection of Momoi's cost submission resulted in the

---

**4.** Section 2640(b) states the following: "(b) In any civil action commenced in the Court of International Trade under section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a], the court shall review the matter as specified in subsection (b) of such section [19 U.S.C. § 1516a(a)(2)(B)(i)]." 28 U.S.C. § 2640(b) (1982).

**5.** Section 2637(d) provides as follows: (d) In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies. 28 U.S.C. § 2637(d) (1982).

assessment of penal dumping duties, contrary to the intent behind the Antidumping Act to equalize competitive conditions. This penalizing affect, plaintiffs maintain, also is contrary to the G.A.T.T. agreement.

Defendant responds that "plaintiffs had both actual notice and an opportunity to be heard, but their failure to provide the requested information in timely fashion required the application of "the best information rule" and thus precluded themselves from having their untimely submissions accepted. Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Administrative Record at 37, *Seattle Marine Fishing Supply Co. v. United States,* Court No. 83–10–01552.

Defendant also urges plaintiffs' argument concerning the acceptance or non-acceptance of information and the distinction made between responding and non-responsive firms, lacks merit. Defendant continues:

This "distinction" does not result from an arbitrary, capricious or improper distinction by the ITA between the two groups. Rather it follows from a proper construction of the pertinent statute and a consistent application of a validly promulgated regulation, 19 C.F.R. § 353.51. This regulation which, *inter alia,* allows only an "opportunity to correct *inadequate* [not no] submissions," fully comports with the intent of Congress as expressed in 19 U.S.C. § 1677e to require use of the best information otherwise available if the information requested is not submitted in a timely manner. *See Woodrum, et al. v. United States, supra.*

\* \* \* \* \* \*

The fact that the ITA allowed nonresponding companies to submit information in response to the pre–1980 Customs questionnaires is irrelevant to the agency's refusal to accept untimely responses to its own questionnaires. The ITA made a legitimate distinction between questionnaires prepared by a predecessor agency and its own questionnaires. It gave nonresponding firms the benefit of the doubt regarding the questionnaires which originated at Treasury under different rules and procedures.

*Id.* at 38–39.

This Court agrees plaintiffs' last arguments appear to lack substance. Plaintiffs' support for their due process argument consists of a topical discussion of due process and the right of opportunity to be heard, supported by a few interesting but ungermane quotes from Supreme Court cases which do not change this Court's decision plaintiff was afforded adequate notice and an opportunity to be heard. As discussed above, plaintiffs acknowledged receipt of the questionnaires and was fully aware of the time limitations involved. Plaintiffs were also conversing with the agency at various times. It is not the fault of the ITA that plaintiffs delayed their responses seven months beyond their alleged request for an extension of time and eight months after the cut-off date on the original cover letter accompanying the questionnaire. If anyone has denied plaintiffs their due process of law, it is plaintiffs themselves.

Equally uncompelling is plaintiffs' accusations the ITA acted in a capricious or arbitrary way, or with abuse of discretion in accepting certain information and rejecting other submissions and in the distinctions made between responding and non-responsive firms. It is well established "[a]n administrative agency endowed with the authority to promulgate regulations is given broad discretion in the exercise of its expertise to interpret and implement those regulations." *Hercules, Inc. v. United States,* — CIT —, —, 673 F.Supp. 454, 488 (1987). *See also Melamine Chemicals, Inc. v. United States,* 732 F.2d 924, 928 (Fed.Cir.1984); *United Electrical, Radio and Machine Workers of America v. United States,* — CIT —, —, 669 F.Supp. 467, 471–72 (1987). The court, upon review of the ITA's determination interpreting and implementing its regulations, should sustain the determination as long as it is not erroneous or inconsistent with the regulation. *Hercules,* — CIT at —, 673

F.Supp. at 488. Here, the ITA did not act erroneously or inconsistently with its regulation.

The ITA properly administered its regulation, 19 C.F.R. § 353.51, implementing § 1677e, allowing "opportunity to correct inadequate submissions" from those interested parties who responded in timely fashion to the questionnaires. § 353.51(b) (1982). Only those firms that did submit information would be notified of the inadequacy of their submissions and the best information otherwise available would then be used. *Id.* The regulation goes on to explain that the actions of those parties refusing to provide the requested information may be taken into account in determining what constitutes the best information available. *Id.* This language falls squarely within the shadow of 19 U.S.C. § 1677e(b). The ITA's actions were not capricious, arbitrary or conducted with abuse of discretion.

Plaintiffs' final contention complaining of a penalizing effect of the ITA's decision to reject the untimely submitted response, are fully addressed above. Momoi was in no way penalized by the ITA. The actions of delay and non-response by Momoi were the self-inflicting penalty of not complying with the statutory mandates.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion is dismissed, the ITA's notice of final results of the administrative review of the antidumping finding on fish netting of manmade fibers from Japan, published in 48 Fed.Reg. 43210 (1983), is sustained, and this action is dismissed.