**OLYMPIC ADHESIVES, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 83–10–01441.**

United States Court of International Trade.

Feb. 17, 1989.

---

Sharretts, Paley, Carter & Blauvelt, P.C., Gail T. Cumins, New York City, for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice,

Sheila N. Ziff, Washington, D.C., for defendant.

## OPINION

MUSGRAVE, Judge.

## BACKGROUND

This lawsuit was commenced in accordance with Section 516A of the Tariff Act, *as amended,* 19 U.S.C. § 1516a, in order to seek review of a final determination of the U.S. Department of Commerce, International Trade Administration (ITA) in a 19 U.S.C. § 1675(a) administrative review of Treasury Decision 78-3, an outstanding Finding of Dumping against *Animal Glue and Inedible Gelatin from Sweden.* 48 Fed.Reg. 40769-70.

The administrative review which is the subject of this action covered entries of *Animal Glue and Inedible Gelatin from Sweden* made during the period from June 1, 1978 through November 30, 1980. Through their review, ITA determined that antidumping duties of 92.72 percent should be assessed on animal glue exported from Sweden during that period by Extraco AB.

The court has jurisdiction under 28 U.S.C. § 1581(c) (1982).

## FACTS

In January of 1977 the Department of Treasury initiated an antidumping duty proceeding in response to information submitted by domestic U.S. glue manufacturers indicating that animal glue and inedible gelatin from Sweden was being sold in the United States at less than fair value. 42 Fed.Reg. 4921.

Treasury's fair value investigation, which covered the period from August 1, 1976 to January 31, 1977, disclosed that only one Swedish producer of animal glue, Extraco, exported its products to the U.S., and that all of Extraco's sales in the U.S. were to plaintiff Olympic.

In making its determination Treasury compared the prices of grades 12, 16, and 20 glue sold by Extraco to Olympic, with the prices at which Extraco sold the same grades of glue to an unrelated purchaser in

its home market. Based upon these comparisons, Treasury determined that the weighted-average dumping margin on exports of animal glue from Sweden to the U.S. during the relevant period was 92.72 percent. 42 Fed.Reg. 39288–89 (August 3, 1977).

The International Trade Commission (ITC) subsequently notified Treasury that imports of Swedish animal glue were injuring the domestic industry. An Antidumping Duty Finding, T.D. 78–3, was published in the Federal Register on December 22, 1977. 42 Fed.Reg. 64116.

Treasury's first administrative review of the dumping finding on animal glue from Sweden covered the period from August 3, 1977 through May 31, 1978. In response to the Customs Service's antidumping questionnaire Extraco reported sales to the United States of grades 14, 18, and 22 glue (as opposed to the sales of grades 12, 16 and 20 glue which were made during the fair value investigation), sales to third countries of 12, 16, and 20 glue, and home market sales of all six of these grades of glue (R. 379, 419, 423–29.) Through this review Treasury determined that the grades of glue imported into the U.S. from Sweden during the period in question were not being sold at less than fair value.

On May 2, 1979, Treasury commenced a second administrative review of the dumping finding on animal glue from Sweden for the period from June, 1978 through December, 1978. Before the completion of this review, however, responsibility for administering the antidumping law was transferred to the Department of Commerce, International Trade Administration (ITA). The ITA's first administrative review, which is the subject of this action, covers the period from June 1, 1978 through November 30, 1980. During this period Olympic purchased animal glues from Extraco of grades 14, 18, and 22. (R. 20–40.) Based on Extraco's questionnaire responses ITA compared Extraco's sales to Olympic with Extraco's home market sales of those same grades of glue and preliminarily determined that the dumping margin on the sales to Olympic during the period from

June 1, 1978 through December 31, 1978 was 8.95 percent, and on sales during the period from January 1, 1979 through November 30, 1980 was 1.93 percent. 46 Fed. Reg. 41540–41 (August 17, 1981).

In October of 1981 counsel for the domestic interested parties submitted to the ITA documents which alleged that Extraco's home market sales of grades 14, 18, and 22 glue were not made in the ordinary course of trade, and that the change in the grades of glue purchased by Olympic from Extraco from 12, 16, and 20 to 14, 18, and 22 did not represent bona fide sales, but were undertaken for the purposes of avoiding antidumping duties. (R. 182–90, 200–19.)

If Extraco's sales in Sweden of glues of grades 14, 18, and 22 were made for the purpose of creating a fictitious home market, and the change in the grades of glue purchased by Olympic were undertaken for the purpose of avoiding antidumping duties then those sales would not have been made in the ordinary course of trade, and thus foreign market value could not properly be determined as required by 19 U.S.C. § 1677b. *See* 19 C.F.R. § 353.3(a)(1). Consequently, the ITA determined that it was necessary to explore the allegations of fictitious sales, and for this purpose sought additional information from Olympic and Extraco.

On November 19, 1981 ITA sent Extraco a questionnaire requesting information regarding Extraco's production of glue of grades 14, 18, and 22, and its sales of those glues in the U.S., in Europe, and in its home market. In its request ITA advised Extraco that a failure to respond to the questionnaire could result in the imposition of antidumping duties based upon the best information available. (R. 353.) A copy of this correspondence was provided to plaintiff's counsel on December 7, 1981. (R. 352.) Extraco submitted a response to ITA's request on January 18, 1982 (R. 363–66) which ITA found to be inadequate; in its response Extraco indicated that it would probably not answer any further questions. Extraco was sent a telegram on May 19, 1982 requesting further information and

warning that a response "was necessary to avoid resort to other sources of information to assess dumping duties ..." (R. 376–77.) Extraco's sales manager responded by telephone on the same day stating that "Extraco would supply no more information or clarification to their previous responses." (R. 441.) Again ITA explained that Extraco's responses were considered insufficient and that if the requested information was not supplied, other sources of information would be used to establish dumping duties. In a letter dated January 24, 1983 Extraco notified ITA that it was no longer producing animal glue and was no longer able to answer any further questions regarding its previous production of such glues. (R. 380.) The ITA adopted the position that

"... since Extraco failed to respond to our request for information on similar merchandise, and because the record appears to substantiate the petitioner's allegation, we will recommend in our final results of administrative review that we use the best information available for assessment and cash deposit rates. The best information available is the 92.72% fair value rate." (R. 379.)

On September 9, 1983, ITA issued its final results of administrative review based upon best information available, with antidumping duties to be assessed at the rate of 92.72 percent, *ad valorem*—the weighted average margin found by Treasury during its fair value investigation. 48 Fed. Reg. 40769–70.

## ISSUES PRESENTED

This case presents two basic questions for review. First, whether ITA's decision to base its determination on best information available is supported by substantial evidence in the record and is otherwise in accordance with law? Second, whether ITA's decision to base the margin of dumping on the rate determined in the fair value investigation as the best information available is supported by substantial evidence in the record and is otherwise in accordance with law?

## STANDARD OF REVIEW

In reviewing challenges to administrative reviews this Court must sustain the ITA's determination unless it is found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516(b)(1)(B) (1982). *See Seattle Marine Fishing Supply Co. v. U.S.*, — CIT —, 679 F.Supp. 1119, 1125 (1988). Substantial evidence has been held to be more than a "mere scintilla", but sufficient to reasonably support a conclusion. *Ceramica Regiomontana, S.A. v. U.S.*, — CIT —, 636 F.Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (Fed.Cir.1987); *See Also Smith–Corona Group v. U.S.*, 713 F.2d 1568, 1571 (Fed.Cir.1983).

Because a reviewing court must accord due weight to an agency's interpretation of a statute it administers, this Court will defer to the agency's interpretation, provided it is "sufficiently reasonable". *See American Lamb Co. v. U.S.*, 785 F.2d 994, 1001 (Fed.Cir.1986). Furthermore, so long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and the agency's conclusions are supported by substantial evidence on the record, the Court will accept the sufficiency of the agency's investigation and will not question its methodology. *Ceramica Regiomontana, supra*, 636 F.Supp. at 966. At the same time, the Court will not permit the agency to contravene or ignore the intent of Congress under the guise of lawful discretion. *Id.*

## DISCUSSION

*Whether ITA's decision to base its determination on best information available is supported by substantial evidence on the record or otherwise in accordance with law?*

■ On September 9, 1983 ITA issued the final results of its administrative review based upon the best information available. Plaintiff alleges, and defendant admits, that the decision to rely on best information available was made because ITA was unable to resolve petitioner's allegations that Extraco's home market sales of certain grades of animal glue were not

made in the ordinary course of trade, but were made to create a fictitious market. Plaintiff argues that this decision was clearly erroneous and unsupported by substantial evidence on the record. Plaintiff states that petitioner's claims of fictitious sales were nothing more than unsubstantiated allegations, and that a reliance on best information available was unwarranted because the ITA had already verified Extraco's home market sales of the grades of glue in question and concluded that there were no discrepancies between the information submitted and the actual sales data. (R. 56–78.) Finally, plaintiff states that it had presented to ITA uncontradicted evidence that it had been purchasing glue of the grades in question from Sweden and elsewhere since 1975, thereby rebutting the claim that these glues were sold to create a fictitious market.

Defendant states in response that petitioner's allegations of fictitious sales were not effectively rebutted by plaintiff; that the information submitted by plaintiff Olympic could not substitute for the data requested from Extraco; and that the favorable verification report was prepared before the petitioner's allegations were made and, consequently, did not address that issue. Thus defendant states that, in the absence of a meaningful response from Extraco, the evidence in the administrative record created a substantial doubt as to whether Extraco's home market sales of grades 14, 18, and 22 were made in the ordinary course of trade. According to defendant, a decision to rely on the information previously submitted by Extraco without further investigation would not have been supported by substantial evidence in the record. It was for this reason that defendant relied on the "best information available".

19 U.S.C. § 1677e(b) (1984) provides:

(b) Determinations to be made on best information available.—

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

Section 353.51 of the ITA regulations, meanwhile, provides in part:

(b) Whenever information cannot be satisfactorily verified, or is not submitted in a timely fashion or in the form required, the submitter of the information will be notified and the affected determination will be made on the basis of the best information then otherwise available which may include the information submitted in support of the petition. An opportunity to correct inadequate submissions will be provided if the corrected submission is received in time to permit proper analysis and verification of the information concerned; otherwise no corrected submission will be taken into account. Where a party to the proceedings refuses to provide requested information, that fact may be taken into account in determining what is the best available information. 19 C.F.R. § 353.51(b) (1982).

It is important to note initially the use of the mandatory term "shall" in the statute, indicating that the best information otherwise available must be used in the enumerated circumstances. *Atlantic Sugar, Ltd. v. U.S.*, 744 F.2d 1556 (Fed.Cir.1984). The Court also notes the essential nature of cooperation by the parties to the investigation. As stated in *Atlantic Sugar, supra,* non-cooperation may be "penalized" by the mandatory use of whatever other best information is available. Furthermore, as indicated in *Ansaldo Componenti, S.p.A. v. U.S.*, —— CIT ——, 628 F.Supp. 198, 205 (1986), the fact that an administering agency does not timely receive a response from a person or party from whom it is requested is, in and of itself, sufficient to sustain Commerce's use of the best information available.

Plaintiff states in its Memorandum in Support of Its Motion for Review that "the ITA never notified Extraco that Extraco had not submitted sufficient information to adequately respond to [petitioners'] allega-

tion." However, the administrative record presents evidence to the contrary. In a letter dated November 19, 1981, for example, Commerce requested of Extraco information relating to issues raised by the domestic industry. That letter stated:

"Failure to respond to this request may result in our using the best information available for appraisement and estimated cash deposit purposes. In Extraco's case the weighted-average margin of 92% found at the time of the fair value investigation is the best information available." (R. 353.)

Although Extraco responded to this request, ITA found the response to be inadequate. On May 19, 1982 Extraco was sent a telegram requesting further information. The telegram stated that a response was "necessary to avoid resort to other sources of information to assess dumping duties ..." (R. 376–77.) This warning was repeated in a telephone conversation with an official of Extraco on the same date. (R. 441.) On January 24, 1983 Commerce was sent a letter from this official stating that Extraco was no longer able to answer any further questions regarding its production of animal glue. (R. 380.)

Plaintiff also states that defendant's resort to best information available without first advising Olympic or counsel for Olympic and Extraco of the alleged inadequacy of Extraco's submissions and without providing Olympic or counsel an opportunity to correct the submissions was contrary to law.

Plaintiff asserts, and the record reflects, that on January 8, 1982 the president of plaintiff Olympic requested that ITA direct all further inquiries for information from Sweden to either Olympic or its counsel, and that counsel requested of ITA in a letter dated April 20, 1982 that it be contacted if ITA disagreed with the calculation of antidumping duties on Extraco sales which counsel had prepared and presented in that letter. However, the only statutory authority cited by plaintiff in support of its assertion that the failure to contact plain-

tiff or counsel of the alleged inadequacy of Extraco's submissions is contrary to law is 19 C.F.R. § 353.51(b). This regulation states in relevant part:

(b) Whenever information cannot be satisfactorily verified, or is not submitted in a timely fashion or in the form required, *the submitter of the information will be notified* ... (emphasis added)

The submitter of the information sought by the ITA in this case was Extraco[1]. As discussed above, Extraco was notified of the alleged inadequacy of its submissions on several occasions, in accordance with the regulation. That regulation did not impose an obligation on the ITA to notify Olympic or counsel of ITA's request for further information from Extraco. And, if Extraco failed to notify Olympic of the further requests, the ITA cannot be held accountable for that breakdown in communication.

Plaintiff further argues that defendant's failure to attempt to supplement the administrative record it perceived to be inadequate was contrary to law. Plaintiff alleges that ITA's determination that it could not resolve petitioner's claims of sales made outside the normal course of trade resulted from its failure to conduct a proper investigation in accordance with law, rather than from any deficiency by Extraco. Plaintiff states that defendant's last request for information from Extraco was made on May 19, 1982 and that the final determination was made on September 9, 1983, and that during this time defendant did not take steps to supplement a record it perceived to be inadequate.

Plaintiff cites *Budd Co., Ry. Division v. U.S.*, 1 CIT 67, 507 F.Supp. 997 (1980) for the proposition that ITA has an obligation to reasonably seek all information that is accessible or may be obtained from whatever its source may be, in order to conduct a thorough investigation. That case involved a preliminary injury determination by the ITC. The Court found that the Commission, in its investigation, had obtained no data on domestic procedures within the rel-

---

1. Although Extraco was nominally the submitter, the real party at interest was the plaintiff importer, as they would bear any additional duties imposed.

evant industry, yet found that the domestic industry was not injured. Given this lack of information in the record, and the failure of the Commission to provide an explicit statement of reasoning, the Court was left "in a quandary as to the basis of and theory underlying the Commission's findings of fact and resulting determination." *Id.* 1 CIT at 76, 507 F.Supp. at 1004. The Court in *Budd* used broad language in imposing a duty upon the Commission to obtain all information. However, the facts in that case clearly distinguish it from the instant case.[2] There the Commission did not gather, and indeed, did not seek any relevant data. This was not so in the case before us. As stated above, the ITA requested on several occasions that Extraco supply it with certain information relevant to the determination. This information was not supplied, either because Extraco was no longer able to provide the information or because it refused to do so. In either case, it cannot be said that ITA did not attempt (albeit in somewhat desultory fashion) to supplement an administrative record which it perceived to be inadequate. Furthermore, as stated in *Atlantic Sugar*, 744 F.2d 1556, 1561 (Fed.Cir.1984) "[n]othing in the best information rule or its legislative history defines a standard of investigative thoroughness." After receiving Extraco's January 24, 1983 letter stating that Extraco would no longer comply with requests for additional information, ITA cannot be said to be entirely unjustified in relying on best information available, in accordance with 19 U.S.C. § 1677e(b) (1984), even though the motive for so doing was clearly retributive.

*Whether ITA's decision to base the margin of dumping on the rate determined in the original fair value investigation as the best information available was supported by substantial evidence and in accordance with law.*

■ Plaintiff challenges ITA's decision as to what constituted the best information available in the administrative review in question on three grounds: (1) in its deter-

mination as to prices of grades 12, 16, and 20 animal glue, ITA should have relied upon home market sales information collected by Treasury in its review of the period from April, 1977 through May, 1978, rather than prices of glue sold in 1976, as the former period was more up-to-date; (2) ITA's decision to determine the margin of dumping for entries made during the review period on the basis of information as to prices in 1976 was contrary to law; and (3) ITA's decision to apply a 92.72 percent margin to the entries in issue, rather than determining the actual purchase price and foreign market value of the merchandise imported was contrary to law. These arguments essentially address one issue, namely, whether ITA's determination as to what constituted the best information available for the purpose of determining the margin of dumping for entries made during the review period was supported by substantial evidence and in accordance with law?

Information relied upon by the ITA as the best information available may include information submitted in the petition. 19 C.F.R. § 353.51(b). In addition, data submitted by another party, data obtained from a similarly situated producer in the same country, as well as information submitted by a respondent in a prior proceeding may be used. In *Tomato Products From Greece*, 46 Fed.Reg. 40245 (August 7, 1981), for example, Commerce preliminarily determined in its 1981 review to collect deposits of estimated countervailing duties equal to the rates previously established in the case in 1974, as the best information available. This decision was made because the response requested from the government of Greece was received by Commerce too late to be considered timely. *See Also Oleoresins from India*, 48 Fed. Reg. 38, 524 (August 24, 1983) (in which information from a prior investigation was used when the Indian government did not fully comply with an information request).

In *Pistachio Group of the Association of Food Industries, Inc. v. U.S.*, — CIT

---

**2.** *See Kenda Rubber Industrial Co., Ltd., et al. v. U.S.,* — CIT ——, 630 F.Supp. 354, 358 n. 4

(1986).

——, 671 F.Supp. 31 (1987) this Court upheld the ITA's final determination, which was based on information submitted by the petitioner as "the best information available", despite plaintiff's objection that the information submitted by the respondent in the investigation was "inherently more reliable." *Id.* at ——, 671 F.Supp. at 40. The Court found that the respondent had cooperated less than fully in the investigation, inasmuch as respondent did not provide ITA with certain pricing information. For this reason, the Court upheld the ITA's use of the best information rule, stating that the rule may be used to prevent "a respondent from controlling the results of the investigation by providing partial information or by delaying or otherwise hindering the investigation." *Id.* As stated by the Court, in the absence of a subpoena power on the part of the ITA, the best information rule is an "effective means of compelling a recalcitrant party to provide necessary information." *Id.*

In *Seattle Marine Fishing Supply Co. v. U.S.,* —— CIT ——, 679 F.Supp. 1119 (1988), the plaintiff brought an action contesting the ITA's administrative review of fish netting from Japan. During its review ITA submitted questionnaires to the exporter of the fish netting in question, requesting submission of the answers within 30 days, and warning that an undue delay or lack of response could result in an appraisement based on the best information available. The exporter did not submit its response to the questionnaire until seven months after the deadline; consequently, ITA refused to consider the response on the basis that it was untimely. Plaintiff argued that despite the delay in the filing of the exporter's response, the response was submitted in sufficient time to allow the ITA to verify the information contained therein "in order to use that information in the final determination." For this reason, plaintiff claimed that this response, and not the information which ITA actually relied upon in its absence, was the best information available. The Court rejected this argument, stating that "[t]he issue is not, as plaintiffs would argue, whose information becomes the best information *otherwise* available, but whether or not evidence on the record supports the ITA's decision." *Id.* —— CIT at ——, 679 F.Supp. at 1128. (Emphasis in original.) Thus, in challenges of the use of best information available the issue is not which, of all the information ITA has to choose from, is the best information available, but rather, whether the information chosen by ITA is supported by substantial evidence on the record.

The "substantial evidence test" restricts the scope of the Court's review of the agency record. Because much deference is given to the agency's interpretation, it will be upheld, as long as it is sufficiently reasonable. *See Hercules, Inc. v. U.S.,* —— CIT ——, 673 F.Supp. 454 (1987); *Seattle Marine supra.* Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Matsushita Electric Industrial Co. v. U.S.,* 750 F.2d 927, 933 (Fed.Cir.1984) (quoting *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)).

For the foregoing reasons the Court sustains the ITA's use of the best information rule and finds that ITA's determination is supported by substantial evidence and in accordance with law.