**TOYOTA MOTOR SALES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant,**

**Hyster Co., et al., Defendants–Intervenors.**

No. 92–03–00134.

United States Court of International Trade.

Aug. 11, 1993.

Dorsey & Whitney, John B. Rehm, Munford Page Hall, II and L. Daniel Mullaney, Washington, DC, for plaintiff Toyota Motor Sales, Inc.

O'Melveny & Myers, Greyson Bryan, Craig L. McKee and Bruce Hirsh, Los Angeles, CA, for plaintiff Toyo Umpanki Co., Ltd.

Frank W. Hunger, Asst. Atty. Gen., David Cohen, Director, Civ. Div., Commercial Litigation Branch, U.S. Dept. of Justice (Jeffrey M. Telep, Patrick Gallagher, Attorney–Advisor, Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel), for defendant.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal, Mary T. Staley and Joanna K. McIntosh, Washington, DC, for defendants-intervenors.

## OPINION

CARMAN, Judge:

Plaintiff moves for judgment upon the agency record pursuant to Rule 56.1 of this Court.[1] Toyo Umpanki contests the final results of the antidumping administrative re-

---

1. On July 23, 1993, this Court granted relief brought on by a motion by which all of the parties consented to the remand of several issues. With respect to Toyo Umpanki, the following matters were remanded: (1) a circumstance-of-sale adjustment for certain selling expenses; and (2) the inclusion of credit income in the calculation of U.S. price. The Court also remanded all issues raised by Toyota Motor Sales. The Toyota issues were as follows: (1) whether Commerce properly allocated U.S. brokerage and handling, inland freight, and warranty expenses to the forklifts subject to the administrative review; and (2) whether Commerce properly recategorized Toyota's home market direct warranty expenses. Only four issues raised by Toyo Umpanki remain.

view, *Certain Internal–Combustion, Industrial Forklift Trucks from Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 3,167 (1992) (*Final Determination*). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1988).

### BACKGROUND

Commerce published an antidumping duty order covering certain internal-combustion forklift trucks from Japan on June 7, 1988, and a notice of an initiation of administrative review of the antidumping duty order on July 25, 1989. *See Antidumping Duty Order and Amendment to Final Determination of Sales at Less Than Fair Value; Certain Industrial Internal–Combustion Forklift Trucks from Japan,* 53 Fed.Reg. 20,882 (1988) (*Antidumping Order*); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 54 Fed.Reg. 30,915 (1989).

Commerce requested Toyo, one of the companies covered by the review, to include all expenses related to further production in the United States. R.Doc. 167. As requested, Toyo reported all costs of further production, but listed the selling, general and administrative (SG & A) expenses as negative costs. R.Doc. 260 at 2547–48. Commerce determined that because SG & A expenses are either positive or nonexistent, negative SG & A cannot exist. *Final Determination* at 3,177. Therefore, in the final determination, Commerce used the absolute value of the negative SG & A expenses reported by Toyo to account for value-added SG & A expenses in the U.S. value-added calculation. *Id.*

Commerce also requested Toyo to supply information on purchase price transactions with sale dates prior to the period of review, but with entry dates during the period of review. R.Doc. 24 at 197. Toyo failed to provide information on these liquidated entries, and as a result, Commerce used the best information available to calculate a dumping margin for unreported, liquidated entries made by C. Itoh Machinery (one of Toyo's related companies). R.Doc. 415 at 2,152; Conf.Doc. 130; Conf.Doc. 131; *Final Determination* at 3177.

Toyo reported an additional amount which it labelled "trading company mark-up." This amount represented payments made by Toyo to its related importers, TAM and CIM. R.Doc. 111 at 372–74; Conf.Doc. 45 at 266A–267A. Plaintiff sought to have the mark-ups treated as an indirect selling expense because it claimed such funds were intra-company transfers. *Final Determination* at 3,178. Commerce determined the trading companies performing the services are directly related to CIM and TAM, and therefore only indirectly related to Toyo, and that the services performed were directly connected with the movement of forklift trucks from Japan to the United States. *Id.* Commerce determined that the mark-ups represented "actual expenses relating to the movement of forklifts which would be incurred as an expense regardless of [the] relationship of the party performing the service to [Toyo], TAM, or CIM." *Id.* at 3,178–79.

Commerce directed Toyo to report expenses in the currency in which they were incurred, but Toyo failed to submit updated computer formatting instructions. Due to this problem a decimal point was wrongly inserted into certain of Toyo's reported costs, making the figures appear to be in dollars rather than yen. As a result, Commerce miscalculated containerization fees, Japan brokerage and handling, foreign inland freight, and the value added expenses involving the removal and installation of forklift masts. Conf.Doc. 148 at 1126A–27A, 1131A–33A, 1138A, 1140A–42A.

Commerce published the preliminary results of its review on May 23, 1991. *Certain Internal–Combustion, Industrial Forklift Trucks from Japan; Preliminary Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 23,675 (1991). Subsequent to Commerce's publication of the Final Determination, plaintiff commenced this action.

### CONTENTIONS OF THE PARTIES

Plaintiff contends Commerce's determination with respect to the following four issues is not supported by substantial evidence and is otherwise not in accordance with law: (1) Commerce's use of the absolute value of the

negative U.S. SG & A expenses reported by Toyo; (2) Commerce's inclusion of liquidated forklift truck entries in the weighted-average margin calculation; (3) Commerce's decision to deduct trading company mark-ups directly from U.S. price; and (4) Commerce's failure to convert Toyo's containerization expenses from Japanese yen into U.S. dollars.

Commerce responds to plaintiff's contentions as follows: (1) the SG & A expenses incurred by Toyo in connection with the replacement of forklift masts should be subtracted from the U.S. price; (2) Toyo's liquidated forklift truck entries were subject to review for purposes of calculating U.S. price and deposit rates for future entries; (3) the trading company mark-ups that plaintiff disputes were actually movement expenses and were thus properly deducted; and (4) Commerce is not required to correct Toyo's failure to report its containerization expenses in yen. Defendant maintains that its determination below was supported by substantial evidence on the record and is otherwise in accordance with law.

Additionally, defendant-intervenor argues that Commerce made an error in its dumping calculations by failing to calculate dumping margins for trucks sold by TAM. Defendant–Intervenor requests that on remand Commerce be instructed to calculate dumping margins for all of Toyo's liquidated entries using BIA.

### STANDARD OF REVIEW

■ A final antidumping determination by Commerce will be held unlawful by this Court if it is unsupported by substantial evidence on the record or is otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

■ The Court must accord substantial weight to the agency interpretation of the statute it administers. *American Lamb Co.*

*v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citations omitted). "An agency's 'interpretation of the statute need not be the *only* reasonable interpretation or the one which the court views as the most reasonable.'" *ICC Indus., Inc. v. United States,* 5 Fed.Cir. (T) 78, 85, 812 F.2d 694, 699 (1987) (emphasis in original) (citation omitted). Where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted).

### DISCUSSION

A. *Selling, General & Administrative Expenses*

■ In calculating U.S. price, Commerce must take into account any value which is added to the merchandise before being sold to an unrelated party:

(e) **Additional adjustments to exporter's sales price.**—For purposes of this section, the exporter's sales price shall also be adjusted by being reduced by the amount, if any, of—

. . . .

(3) any increased value, including additional material and labor, resulting from a process of manufacture or assembly performed on the imported merchandise after the importation of the merchandise and before its sale to a person who is not the exporter of the merchandise.

19 U.S.C. § 1677a(e)(3) (1988). To calculate U.S. price when there has been a decrease in the cost of the merchandise as imported, it is necessary to adjust the price of the merchandise as sold upward in order to reflect the decrease. *See Timken Co. v. United States,* 14 CIT 753, 755–56, 1990 WL 180495 (1990).

■ After the merchandise at issue was imported into the United States, Toyo replaced the forklift masts with cheaper masts. Commerce adjusted for the resulting diminution in the cost of the forklifts by adding the difference in cost to the price paid by the

U.S. customer in order to calculate exporter's sales price. Toyo argues that just as Commerce treated the substitution of a cheaper mast as a negative cost, so should it treat the SG & A expenses associated with removing the masts. Thus, according to Toyo, Commerce should not have deducted the absolute value of the SG & A expenses, but should have subtracted from U.S. price a "negative cost increase." Toyo Brief at 12.

Commerce treated factory overhead, labor and SG & A expenses in the same manner due to the fact they are all costs actually incurred in the process of mast substitution. Defendant distinguishes the mast substitution from the related SG & A expenses, because the SG & A expenses do not detract from the value of the forklifts as the substitution does. In addition, defendant characterizes the SG & A expenses as value adding expenditures necessary for facilitation of the sale. The Court finds defendant's argument persuasive.

Although plaintiff argues SG & A expenses should be treated as negative costs, it concedes that labor and factory overhead costs incurred in replacing the masts are actual costs that were properly assigned positive values. For purposes of calculating exporter's sales price, there is no basis for distinguishing between these expenses. The Court holds Commerce's determination with respect to the issue of SG & A expenses is based on substantial evidence on the record and is otherwise in accordance with law.

■ Alternatively, Toyo argues that if Commerce rejects its contention negative SG & A expenses do exist, Commerce should at least consider a method of allocating SG & A "that ensures total SG & A allocated to a transaction does not exceed the amount actually incurred by [Toyo] on that transaction." Toyo Brief at 20. Plaintiff contends Commerce should not use as BIA the absolute value of the negative SG & A expenses. Instead, plaintiff maintains, Commerce should have used the calculation methodology suggested by Toyo in its clerical errors submission. This methodology would result in positive SG & A allocations. Conf.Doc. 155. The Court finds plaintiff's argument to be without merit.

Commerce needed to account for the SG & A expenses relating to Toyo's further manufacturing operations, but plaintiff only provided it with improperly reported negative SG & A expenses. It was therefore necessary for Commerce to use the best information available (BIA). "[B]ecause Congress has 'explicitly left a gap for the agency to fill' in determining what constitutes the best information available, the ITA's construction of the statute must be accorded considerable deference." *See Allied–Signal Aerospace Co. v. United States,* 11 Fed.Cir. (T) ——, ——, 996 F.2d 1185, 1191 (June 22, 1993) (citation omitted). Pursuant to its broad discretion in this area, Commerce determined the best information available to be the absolute value of Toyo's reported SG & A expenses. The Court holds Commerce's choice of BIA was in accordance with law.

*B. Liquidated Sales*

Pursuant to 19 U.S.C. § 1675(a)(2)(A) (1988), Commerce must determine "the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination...." In this case, the antidumping duty order provided as follows:

> The products covered by this investigation are certain internal-combustion, industrial forklift trucks, with lifting capacity of 2,000 to 15,000 lbs..... The products covered by the investigation are further described as follows: Assembled, not assembled, and less than complete, finished and not finished, operator-riding forklift trucks powered by gasoline, propane, or diesel fuel internal-combustion engines of off-the-highway types used in factories, warehouses, or transportation terminals for short-distance transport, towing, or handling of articles.

*Antidumping Order* at 20,863. Commerce sought information concerning entries of products covered by the language of the order. Toyo failed to provide Commerce with the requested information regarding liquidated entries.

■ Toyo argues that because liquidated sales of the forklift trucks are not subject to

the antidumping duty order and are not included within the final determination, Commerce cannot use such sales in calculating deposit rates. Commerce can only assess duties on unliquidated entries, but it can gather information on liquidated entries of the covered imports to accurately calculate the U.S. price of the merchandise under review and deposit rate for future entries. *See* 19 U.S.C. § 1675(a)(2). The liquidated entries in question meet the listed physical criteria and were imported between the dates of the review period. Therefore, Commerce acted in accordance with law when it requested liquidated sales information from Toyo in order to calculate the U.S. price of the forklift trucks under review and deposit rates for future entries.

Although plaintiff argues that as a matter of law Commerce may not include liquidated entries in the calculation of deposit rates, plaintiff recognizes that it is a standard practice of Commerce to use liquidated entries where a margin based upon unliquidated entries would not be representative. Toyo, however, contends that Commerce's finding that Toyo's unliquidated sales "may be" unrepresentative was not based on substantial evidence because Toyo's unliquidated entries constituted 99% of its sales over the review period.

■ Plaintiff refused to submit its liquidated sales information. Thus, Commerce was not able to determine whether liquidated sales amounted to only 1% or whether these sales would have skewed the calculation of U.S. price. "It is Commerce, not the respondent, that determines what information is to be provided for an administrative review." *Ansaldo Componenti, S.p.A. v. United States,* 10 CIT 28, 37, 628 F.Supp. 198, 205 (1986). This Court holds that Commerce properly requested information of plaintiff's liquidated sales of the subject merchandise, and that when plaintiff refused to provided this information, Commerce properly resorted to BIA. *See* 19 U.S.C. § 1677e(c) (1988).

## C. Mark–Ups

■ According to Toyo, Commerce should not have deducted certain trading company "mark-ups." Plaintiff paid its related trading companies a margin or mark-up on the amounts actually paid for the transportation services which the trading companies arranged. Toyo maintains Commerce should treat the mark-ups as an indirect selling expense because the payments are intra-company transfers of funds.

Pursuant to 19 U.S.C. § 1677a(d)(2)(A) (1988), Commerce must adjust the purchase price and the exporter's sales price by reducing,

> except as provided in paragraph (1)(D), the amount, if any, included in such price, attributable to any additional costs, charges, and expenses, and United States import duties, incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States....

Commerce found the services performed by CIM and TAM's trading companies to be directly connected with the movement of forklift trucks from Japan to the United States. Commerce therefore determined Toyo's mark-ups are actual expenses relating to the movement of the subject imports that Toyo would have incurred regardless of the relationship of the party performing the service. Commerce's conclusions with respect to trading company mark-ups are reasonable and its determination of this issue is in accordance with law.

Toyo also argues Commerce's treatment of the mark-ups is contrary to its past practice and cites two determinations in support of its argument. First, Toyo cites *Final Determination of Sales at Less Than Fair Value; Gray Portland Cement and Clinker from Japan,* 56 Fed.Reg. 12,156 (1991) (*Gray Portland Cement from Japan*). Toyo Brief at 31. The language pointed to by plaintiff, is part of a five step analysis based on the particular facts of *Gray Portland Cement from Japan* in which Commerce determined the sales in question were exporters' sales price sales. *Id.,* 56 Fed.Reg. at 12,164. The quote plaintiff uses to demonstrate an established practice of Commerce is based on a fact-specific analysis taken from a discussion of a question not at issue in the instant case.

The second determination cited by Toyo is *Final Determination of Sales at Less Than Fair Value, Gray Portland Cement and Clinker from Mexico*, 55 Fed.Reg. 29,244 (1990) (*Gray Portland Cement from Mexico*). Toyo Brief at 32 n. 6. In this determination, Commerce did not deduct a related party commission which it considered to be an intra-corporate transfer. *Gray Portland Cement from Mexico*, 55 Fed.Reg. at 29,251. Additionally, Commerce did not make an allowance for commissions paid to related parties. *Id.* Neither of these situations is applicable to the case at hand. After verifying the expenses at issue, Commerce determined they were not related to sales or any other activity which would serve as a basis for a commission. Furthermore, Commerce found that the trading companies are directly related to CIM and TAM, and are only indirectly related to Toyo. *See* 19 U.S.C. § 1677(13)(D) (1988). Therefore, the mark-ups are not intra-company transfers. The Court finds no merit in plaintiff's argument and holds plaintiff has failed to demonstrate a standard of practice from which Commerce has deviated.

### D. Currency Conversion

■ Toyo argues Commerce's failure to convert plaintiff's containerization expense from Japanese yen to U.S. dollars is not supported by substantial evidence on the record. However, plaintiff fails to identify anything on the record in support of its position. Plaintiff failed to submit updated computer formatting instructions that would have produced yen-denominated amounts rather than dollar-denominated amounts. As a result it appeared that the reported expenses were still listed in dollars and Commerce will not convert dollar-denominated amounts. There was no reason for Commerce to believe that, despite the decimal point set to two places, these amounts were actually denominated in yen. "[T]his Court has recognized that '[p]laintiffs must prepare their own data accurately. They cannot expect Commerce to be a surrogate to guarantee all of their submissions are correct.'" *Murata Mfg. Co. v. United States*, 17 CIT ——, ——, 820 F.Supp. 603, 605 (April 20, 1993) (citation omitted). This Court holds Commerce properly did not convert the amounts to yen. Although plain-

tiff may find the result in this case to be harsh, plaintiffs must submit accurate data. "[W]ere the rule otherwise, some plaintiffs might endeavor to disrupt administrative proceedings by improperly seeking to manipulate data to secure Machiavellian style ends." *Id.*, 820 F.Supp. at 607–608.

### CONCLUSION

After considering all of plaintiff's arguments, the Court holds (1) the SG & A expenses incurred by Toyo in connection with the replacement of forklift masts should be subtracted from the U.S. price and Commerce properly used as BIA the absolute value of the negative SG & A expenses reported by Toyo; (2) Toyo's liquidated forklift truck entries were subject to review; (3) the trading company mark-ups that plaintiff disputes were actually movement expenses; and (4) Commerce is not required to correct Toyo's failure to report its containerization expenses in yen. Commerce's determination with respect to these issues is based on substantial evidence on the record and is otherwise in accordance with law.

### ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that the issues raised by Toyo Umpanki Company, Ltd. in Counts I, II, III, and IV of its complaint with respect to (1) SG & A expenses incurred by Toyo in connection with the replacement of forklift masts; (2) liquidated forklift truck entries; (3) trading company mark-ups; and (4) conversion of Toyo's containerization expenses from Japanese yen into U.S. dollars are dismissed; and it is further

**ORDERED** that the Department of Commerce's final determination in *Certain Internal–Combustion, Industrial Forklift Trucks from Japan; Final Results of Antidumping Duty Administrative Review*, 57 Fed.Reg. 3,167 (1992) is sustained with respect to these four issues.