MITSUBISHI HEAVY INDUS., LTD., Plaintiff,

v.

UNITED STATES, Defendant,

Hyster Co. et al., Defendant–Intervenors.

Court Number 92–02–00118.

United States Court of International Trade.

Sept. 15, 1993.

Baker & Hostetler, Kenneth G. Weigel, Thomas Hylden, John C. Lindsey and Patricia M. Steele, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Civ. Div., Commercial Litigation Branch, U.S. Dept. of Justice and A. David Lafer, Marc E. Montalbine, Pria Alagari, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal, Mary T. Staley and Joanna K. McIntosh, Washington, DC, for defendant-intervenors.

OPINION

CARMAN, Judge:

Plaintiff, Mitsubishi Heavy Industries (MHI), moves for judgment upon the agency record pursuant to Rule 56.1 of this Court.

Plaintiff contests certain aspects of the Department of Commerce's (Commerce) final results in *Certain Internal–Combustion, Industrial Forklift Trucks from Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 3,167 (1992) (*Final Determination*). Plaintiff seeks to have the Court remand the matter to Commerce. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) (1988).

## BACKGROUND

Commerce published an antidumping duty order covering certain internal-combustion forklift trucks from Japan on June 7, 1988, and a notice of an initiation of administrative review of the antidumping duty order on July 25, 1989. *See Antidumping Duty Order and Amendment to Final Determination of Sales at Less Than Fair Value; Certain Industrial Internal–Combustion Forklift Trucks from Japan,* 53 Fed.Reg. 20,882 (1988); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 54 Fed.Reg. 30,915 (1989) (*Initiation*). The review covered the period of November 24, 1987 through May 31, 1989. *Initiation,* 54 Fed. Reg. 30,915.

Commerce sent MHI a questionnaire on August 4, 1989, requesting information on MHI's corporate structure and sales data of forklift trucks in the home market and United States. R.Doc. 24. MHI stated it sold forklift trucks directly to Mitsubishi Motors Corporation (MMC) and MHI dealers, and made its sales to the U.S. through trading companies. Conf.Doc. 14 at 245. According to MHI, "[b]oth types of dealers operate under the same dealership agreement, except the agreement with MHI dealers has an additional article providing advice and counsel by MHI. Also, as explained below, MHI dealers receive special rebates and terms of payment." *Id.* MHI argued in its response Commerce "should only consider sales to MMC dealers because all MMC dealers are treated equally and are treated differently than MHI dealers." *Id.* at 248. MHI, therefore, submitted data pertaining to its sales to MMC dealers, but no information regarding MHI dealer sales to unrelated customers. MHI also failed to report approximately 30% of U.S. sales, arguing these sales had been liquidated by the U.S. Customs Service. Conf.Doc. 14; Conf.Doc. 95.

In response to petitioners' below cost allegations, on March 20, 1990, Commerce requested MHI provide information on sales by MHI dealers to unrelated buyers or show that sales from MHI to MHI dealers were arm's-length transactions. R.Doc. 176. Commerce also asked MHI to correct prior deficiencies including submitting MHI dealer sales to unrelated customers in Japan in order to demonstrate whether MHI sales to MHI dealers were arm's-length transactions. *Id.* MHI subsequently submitted a response, but refused to submit data on sales between MHI dealers and end users. R.Doc. 187 at 1595. MHI claimed the requested information was not relevant to the proceeding "regardless of whether MHI's sales to MHI dealers are or are not considered arms-length transactions." *Id.* Plaintiff further stated it would "be extremely burdensome if not impossible for MHI to obtain information from its related dealers on their sales." *Id.* at 1597.

After Commerce requested information relevant to its change in the model match selection process and made additional requests for MHI dealers sales to end users, MHI submitted its supplemental responses. *See* R.Doc. 208; R.Doc. 214; R.Doc. 222. It failed, however, to report sales for allegedly liquidated entries and again refused to submit MHI dealer sales to end users. R.Doc. 222 at 2,111.

MHI continued to refuse to supply the required data despite requests from Commerce in several letters and conferences. *See* R.Doc. 248; R.Doc. 250; R.Doc. 256; R.Doc. 272. Commerce advised MHI that failure to report all MHI dealer sales to end users could result in the use of BIA. R.Doc. 272. MHI finally agreed to provide the data if it were granted a 45–day extension of time which, according to MHI, would be necessary to "undertake the enormous task of compiling this information." R.Doc. 278 at 337–38. MHI, however, stated that Commerce must determine whether sales between MHI dealers and end users would be used in comput-

ing foreign market value before MHI would submit such information. *Id.*

On October 16, 1990, the day after the due date for MHI's supplemental questionnaire, Commerce personnel met with MHI representatives to discuss MHI's request for an extension of time. R.Doc. 287. During this meeting, Commerce stated it needed the MHI dealer to end users sales information and MHI responded that Commerce should not examine such sales. *Id.* At the conclusion of the meeting, Commerce denied MHI's request for an extension of time. R.Doc. 284. In its denial letter, Commerce pointed out that MHI had over one year to obtain the MHI dealer's end-user sales and more than six months to gather the cost of production data for the MHI sales to related MHI dealers. *Id.*

Shortly after Commerce denied MHI's request for an extension of time, MHI wrote Commerce to protest the denial and to reiterate its contention that MHI dealer sales to end users were irrelevant to the investigation. R.Doc. 285. In addition, in contrast to previous statements, MHI claimed it could not supply MHI dealers sales to end users data because

> it is not possible to obtain from these dealers the information necessary to respond fully to a questionnaire from the Department.... [A]s a practical matter MHI is unable to provide these data in a form sufficient for purposes of calculation of foreign market value. As we all have agreed, it would have been preferable to provide these data and then discuss their applicability, but this could not be done.

*Id.* at 385.

On November 1, 1990, petitioners sent Commerce a letter arguing BIA should be used in calculating MHI's dumping margin. R.Doc. 298. In response to petitioners' letter, MHI submitted a letter with attachments to Commerce. Commerce, however, rejected the submission, citing 19 C.F.R. § 353.31(b)(2) (1990)'s prohibition against unsolicited questionnaire responses. R.Doc. 320. MHI sent additional letters in which it argued Commerce could not properly use or request information pertaining to MHI dealer sales to end users under its regulations.

R.Doc. 324 at 1,135–38; R.Doc. 325 at 1,154. Additionally, MHI maintained even if BIA were proper, Commerce should use constructed value as BIA for MHI dealer sales to end users in order to calculate foreign market value. R.Doc. 325 at 1,154.

Commerce published the preliminary results of its review on May 23, 1991. *Certain Internal–Combustion, Industrial Forklift Trucks From Japan; Preliminary Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 23,675 (1991). MHI requested Commerce conduct a public hearing, and on July 12, 1991, after MHI and petitioners submitted hearing briefs, Commerce held a hearing on its preliminary determination. R.Doc. 446. On August 7, 1991, Commerce rejected material contained in MHI's hearing briefs due to the presence of new and unsolicited factual information. R.Doc. 458.

Commerce published the final results of its administrative review on January 28, 1992. The final results affirmed Commerce's preliminary determination to use best information available (BIA) and calculated MHI's dumping margin to be 39.15%. *Final Determination,* 57 Fed.Reg. at 3,184.

## CONTENTIONS OF THE PARTIES

MHI contends MHI's decision to use BIA to calculate foreign market value and U.S. price for MHI's sales was not in accordance with law. MHI argues Commerce was unjustified in its demand for information regarding sales between MHI dealers and end users in the home market and data on those U.S. sales which Customs had liquidated. Plaintiff claims there was substantial evidence on the record demonstrating that all sales by MHI to MHI dealers in the home market were arm's-length sales.

Plaintiff maintains the statutory and regulatory framework permit, but do not require, Commerce to use sales to related parties. According to MHI, Commerce's calculation of foreign market value should have been based on sales by MHI to MMC and MHI dealers. Additionally, MHI argues Commerce should not have resorted to BIA even if the MHI sales to MHI dealers were not arm's-length, because (1) Commerce would not have used

the requested information in its calculations and (2) the information did not exist.

MHI maintains Commerce's choice of BIA was not in accordance with law. If the Court holds Commerce properly used BIA, MHI argues that Commerce should not have used the "all others" rate. Instead, according to MHI, Commerce should have used the evidence on the record and the results of the review wherever possible.[1]

Defendant maintains its final determination is based on substantial evidence on the record and is otherwise in accordance with law. According to Commerce, it properly requested data on sales by MHI dealers to end users because the information was necessary to calculate foreign market value. Similarly, Commerce argues it properly required MHI to provide data on all U.S. sales, including liquidated entries, because Commerce could use the data to determine the estimated antidumping duty deposit for future entries pursuant to 19 U.S.C. § 1675(a)(2) (1988).

Commerce contends it properly decided to use BIA after MHI impeded the review by (1) failing to provide MHI dealer sales to end users; (2) reversing its position concerning the arm's-length nature of its sales to MHI dealers; and (3) failing to provide information on U.S. sales which Customs had liquidated. Moreover, Commerce argues it was well within its discretion in choosing as BIA MHI's rate from the original less than fair value (LTFV) investigation.

## STANDARD OF REVIEW

■ In an action challenging Commerce's final determination, this Court must decide whether Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to

support a conclusion." *Ceramica Regiomontana S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

■ The Court must accord substantial weight to the agency's interpretation of the statute it administers. *American Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citations omitted). "An agency's 'interpretation of the statute need not be the *only* reasonable interpretation or the one which the court views as the most reasonable.'" *ICC Indus., Inc. v. United States,* 5 Fed.Cir. (T) 78, 85, 812 F.2d 694, 699 (1987) (emphasis in original) (citation omitted). Where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The agency, however, must not "contravene or ignore the intent of the legislature or the guiding purpose of the statute." *Ceramica Regiomontana,* 10 CIT at 405, 636 F.Supp. at 966 (citations omitted).

## DISCUSSION

### A. *Foreign Market Value*

Pursuant to 19 U.S.C. § 1675(a)(2)(A) (1988), Commerce must determine "the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination." In order to make this determination, Commerce must ascertain, among other things, whether sales to related parties are at arm's-length. *See* 19 U.S.C. § 1677b(a)(3) (1988).[2]

---

1. In its brief, plaintiff also argues that Commerce's rejection of certain information was not supported by substantial evidence and was not otherwise in accordance with law. On May 27, 1993, however, this Court ordered that the documents plaintiff sought to have added to the administrative record were properly excluded by Commerce.

2. MHI concedes 19 U.S.C. § 1677b(a)(3) and 19 C.F.R. § 353.45(a) (1989) "allow, but do not require" Commerce to calculate foreign market value using sales to related parties. *Plaintiff's Brief* at 6.

■ MHI informed Commerce in its November 20, 1989 response that its sales to MHI dealers were not arm's-length. Conf. Doc. 14. MHI stated there are two types of dealers in Japan: MHI dealers and MMC dealers. According to MHI all dealers receive the same gross prices, but the dealer agreements differ in that MHI dealers have an article in their agreements concerning counselling by MHI on their operations. Also, the net prices differ by dealer type because MHI dealers receive special discounts and rebates and special terms of payment. *Id.* at 245. When sales to related parties are not arm's-length transactions, Commerce is permitted to base foreign market value upon the sales price to the first unrelated party. *See* 19 U.S.C. § 1677b(a)(3); 19 C.F.R. § 353.45 (1990). Commerce, therefore, requested information from MHI regarding sales from its related dealers to end users.

Despite Commerce's granting MHI's requests for extensions of time in order to obtain the end user sales data, MHI never provided the information. Instead, MHI reversed its position concerning the arm's-length nature of its sales to MHI dealers, but failed to carry its burden of proof demonstrating the sales to related parties were at arm's-length. Throughout the investigation, MHI continually objected both verbally and in writing to Commerce's request for sales data between MHI dealers and end users. MHI unilaterally decided that such data was irrelevant to the investigation.

In a letter dated October 10, 1990, MHI informed Commerce that it would provide the data only if Commerce granted it an extension of time of 45 days. MHI explained that it needed the extension because

> MHI does not have sales information, including prices and adjustments, for sales by MHI dealers. It must ask each dealer to collect this information.... Nonetheless if there is a reasonable basis for the Department requiring this information, MHI will, with the dealers, undertake the enormous task of compiling this information. However, it will take between 30 and 45 days for this information to be compiled.... [T]he information will likely be provided to the Department before December 1, 1990....

R.Doc. 278 at 337–38.

After Commerce denied its request for an extension of time, MHI submitted a letter which indicated a reversal in MHI's position concerning its ability to provide the data:

> MHI is unable to supply data on sales by MHI dealers to end users.... [I]t is not possible to obtain from these dealers the information necessary to respond fully to a questionnaire from the Department. Moreover, the recordkeeping practice of the dealers make [sic] verification of any data provided by them doubtful. Thus, as outlined above, while we do not believe these data are legally necessary for calculation of foreign market value, as a practical matter MHI is unable to provide these data in a form sufficient for purposes of calculation of foreign market value.

R.Doc. 285 at 385. Thus, just as MHI changed its position on whether MHI's sales to MHI dealers were arm's-length, it changed its position on whether it was able to provide the requested information.

Commerce granted MHI three extensions of time and sent MHI several deficiency letters before denying MHI's request for an extension of time on October 16, 1990. *See, e.g.,* R.Doc. 125 at 266; R.Doc. 129 at 386; R.Doc. 130 at 390; R.Doc. 211 at 1975; Conf. Doc. 88. Thus, Commerce provided MHI with a more than adequate amount of time in which to supply the requested information.

Furthermore, the Court finds no merit in MHI's claim that the information did not exist. Commerce established at verification that the information did exist and was available. *See* Conf.Doc. 111 at 2,824–25. The cited document indicates certain information, that appears to be of the type requested by Commerce, was provided in a report to the company president.

■ MHI contends Commerce was not authorized under the law and regulations to request data on sales by MHI dealers since MHI sold "to" rather than "through" these dealers. According to MHI, the use of BIA would be inappropriate because the requested data would not be used to calculate for-

eign market value under Commerce's model matching test and level of trade regulation and was not necessary for the below cost test. The Court does not address the issue MHI raises regarding whether MHI sales were "to" rather than "through" MHI dealers. Because MHI failed to provide Commerce with the requested information, Commerce was unable to determine whether in fact MHI sales to its related dealers were within the regulatory scheme of 19 C.F.R. § 353.45(a) or (b).

Review of the administrative record reveals a pattern similar to that found in *Ansaldo Componenti:* unresponsive, insufficient, and untimely submissions in response to repeated attempts by Commerce to elicit information relevant to the underlying reviews. *Ansaldo Componenti, S.p.A. v. United States,* 10 CIT 28, 36, 628 F.Supp. 198, 205 (1986). The *Ansaldo* Court pointed with disapproval to Ansaldo's unilateral determination regarding the necessity of information requested by Commerce.

> Of equal concern to the Court is plaintiff's propensity to draw conclusions of both factual and legal significance on matters properly within Commerce's domain. The administrative record discloses several instances in which Ansaldo chose not to submit the information requested because Ansaldo had concluded such information could not serve as a basis for Commerce's administrative review.... Such conclusions, reached unilaterally with no foundation in statute or administrative practice, are inherently flawed. It is Commerce, not the respondent, that determines what information is to be provided for an administrative review.

*Id.* at 37, 628 F.Supp. at 205. The *Ansaldo* Court concluded that Commerce's use of BIA was justified by Ansaldo's failure to furnish the requested information. *Id.* at 38, 628 F.Supp. at 206.

MHI argues *Ansaldo* does not apply to the instant case because MHI cooperated to the best of its ability and was not "persistently untimely." The Court disagrees with MHI. Commerce repeatedly requested information on sales by MHI's related dealers to the first unrelated customers. *See, e.g.,* R.Doc. 176;

R.Doc. 256; R.Doc. 250; R.Doc. 272. Rather than provide the required data, MHI filed submissions explaining why it did not need to and was allegedly unable to submit the requested information. *See, e.g.,* R.Doc. 187; R.Doc. 201; R.Doc. 238; R.Doc. 245.

Additionally, MHI made unilateral decisions concerning the necessity of information requested by Commerce just as Ansaldo did. As the Court pointed out in *Ansaldo,* "the consequence of failing to provide adequate and timely information is to leave Commerce with no alternative but to proceed with its review relying upon the best information available." *Ansaldo,* 10 CIT at 38, 628 F.Supp. at 206. The Court holds Commerce properly (1) determined MHI's sales to MHI dealers were not arm's-length; (2) requested information concerning MHI dealer sales to end users; and (3) resorted to BIA.

### B. *U.S. Sales*

 Commerce may gather information on liquidated entries of subject imports to calculate accurately the U.S. price of the merchandise under review and deposit rate for future entries. 19 U.S.C. § 1675(a)(2). Pursuant to 19 U.S.C. § 1675(a)(2), Commerce requested information from MHI on "*all* U.S. sales of forklift trucks within the scope of the antidumping duty order for the review period." R.Doc. 176 at 979 (emphasis in original). Plaintiff failed to submit its liquidated sales information, thus preventing Commerce from determining whether inclusion of these entries was necessary to accurately establish estimated future deposit rates and U.S. price. *See Final Determination,* 57 Fed.Reg. at 3,182.

MHI contends Commerce did not need the liquidated sales information because the sales were not large in volume in relation to unliquidated sales and its unliquidated sales were representative of all U.S. sales. *Plaintiff's Brief* at 75. MHI did not provide Commerce with the requested information on liquidated sales, thus Commerce had no way of determining whether such sales were large in volume or whether the unliquidated sales were representative of all U.S. sales. "It is Commerce, not the respondent, that determines what information is to be provided for

an administrative review." *Ansaldo,* 10 CIT at 37, 628 F.Supp. at 205. This Court holds Commerce properly requested information of plaintiff's liquidated sales of the subject merchandise, and when plaintiff failed to provide this information, Commerce properly resorted to BIA. *See* 19 U.S.C. § 1677e(c) (1988); *Toyota Motor Sales, Inc. v. United States,* 17 CIT ——, ——, 829 F.Supp. 1364, 1368–69 (1993).

### C. *Choice of BIA*

Pursuant to 19 U.S.C. § 1677e(c), Commerce may resort to BIA "whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation[.]" During the administrative proceedings, MHI refused to produce information requested in a timely manner and significantly impeded the investigation. MHI's reversal regarding the arm's-length status of its sales to related dealers placed its entire questionnaire response in an unreliable light. Commerce's decision to resort to BIA was therefore in accordance with law.

▮ If the Court finds the use of BIA was appropriate, MHI requests the Court order Commerce to use the highest rate from the current investigation, 12.22%, rather than the assigned 39.15% percent as MHI's antidumping duty margin. MHI claims Commerce should have only used BIA in place of those sales by MHI dealers to end users that would have been used to calculate foreign market value. Plaintiff maintains Commerce's use of the all others rate resulted in the inappropriate use of BIA as a punitive measure. Because MHI did not participate in the initial investigation, MHI claims there is no relationship between the rate from the original investigation and appropriate BIA for MHI.

Under Commerce's two-tier BIA method, Commerce will select the higher of the highest rate assigned for any firm in the LTFV investigation or the highest rate calculated in the administrative review for those respondents failing to cooperate. *Allied–Signal Aerospace Co. v. United States,* 11 Fed.Cir. (T) ——, ——, 996 F.2d 1185, 1190–91 (1993).

Commerce uses the second tier for those respondents who substantially cooperate but who fail to provide the requested information in a timely manner or in the required form. *Id.* at ——, 996 F.2d at 1190–91. BIA under the second tier is based on the higher of the respondent's own prior LTFV rate or the highest rate calculated in the current administrative review. *Id.* at ——, 996 F.2d at 1191. Commerce used the second tier, the less severe BIA assignment, in the instant case, employing the rate applied to plaintiff in the original investigation.

Plaintiff's argument that Commerce should have used only partial BIA is similar to an argument rejected by this Court in *Chinsung Indus. Co. v. United States,* 13 CIT 103, 705 F.Supp. 598 (1989). The plaintiffs' responses to Commerce's questionnaires in *Chinsung* contained numerous omissions, allocation errors, oversights and miscalculations. *Id.* at 106, 705 F.Supp. at 601. The *Chinsung* plaintiffs argued Commerce should have used those portions of their responses that were verified. The Court responded to plaintiffs' argument as follows: "Commerce, in its final determination aptly pointed out that it could not use only portions of a response that were verifiable since this 'would allow respondents to selectively submit data that would be to their benefit in the analysis of their selling practices.'" *Id.,* 705 F.Supp. at 601 (citation omitted). Similarly, MHI will not be allowed to selectively submit data and then demand only partial BIA be used. The Court holds that Commerce's BIA choice was made in accordance with law.

### CONCLUSION

After considering all of plaintiff's arguments, the Court holds the Department of Commerce's final determination is supported by substantial evidence and is otherwise in accordance with law. Therefore, *Certain Internal–Combustion, Industrial Forklift Trucks from Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 3,167 (1992) is sustained and this case is dismissed.

ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that plaintiff's motion is denied; and it is further

**ORDERED** that the Department of Commerce's determination in *Certain Internal–Combustion, Industrial Forklift Trucks from Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 3,167 (1992) is sustained; and it is further

**ORDERED** that the action is dismissed.