Slip Op. 99 - 35

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

MUKAND, LTD.,

                    Plaintiff,

          v.

UNITED STATES,

                    Defendant,

        and

AL TECH SPECIALITY STEEL CORP.,
CARPENTER TECHNOLOGY CORP.,
REPUBLIC ENGINEERED STEELS,
SLATER STEELS CORP., AND TALLEY
METALS TECHNOLOGY,

                Defendant-Intervenors.

**PUBLIC VERSION**

**Before: MUSGRAVE, JUDGE**

Court No. 98-04-00925

[Plaintiff moves for judgment upon the agency record challenging the final results of the second administrative review of stainless steel bar from India. Defendant and defendant-intervenors oppose plaintiff's motion. **Held**: The Court affirms the final results.]

Dated: April 9, 1999

    *Ablondi, Foster, Sobin & Davidow, p.c.* (*Peter Koenig*) for plaintiff.

    *David W. Ogden*, Acting Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Michelle Lynch*) for defendant.

    *Collier, Shannon, Rill & Scott, PLLC* (*Laurence J. Lasoff, Robin H. Gilbert, and John M. Herrmann*) for defendant-intervenors.

## OPINION

Plaintiff, Mukand, Ltd., an Indian producer of stainless steel bar, moves for judgment upon the agency record contesting the final results of the second administrative review of the antidumping duty order on stainless steel bar from India. *See Stainless Steel Bar From India: Final Results of Antidumping Duty Administrative Review*, 63 Fed. Reg. 13,622 (Mar. 20, 1998) ("*Final Results*"). Mukand requests that this Court remand the U.S. Department of Commerce's ("Commerce" or "the Department") dumping margin calculation with the instruction that Commerce "recalculate the dumping duty margin without increasing the home market price in the . . . sales [at issue] for an alleged warehouse surcharge." Pl.'s Rule 56.2 Mem. and Mot. for J. on the Agency R. at 6 ("Plaintiff's Br."). Plaintiff argues that Commerce's decision to increase reported prices for the sales at issue to account for a warehouse surcharge is unsupported by substantial evidence. *Id.* at 5.

In response, both defendant, Commerce, and defendant-intervenors, AL Tech Speciality Steel Corp., Carpenter Technology Corp., Republic Engineered Steels, Slater Steels Corp., and Talley Metals Technology (collectively "AL Tech"), domestic producers of the subject merchandise, oppose plaintiff's motion and request that the Court sustain the *Final Results* in their entirety. Commerce and AL Tech contend that: (1) Commerce's determination *was* based upon substantial evidence; and (2) Commerce properly exercised its discretion to disregard Mukand's untimely factual submissions.

### *Background*

On February 24, 1997, plaintiff requested an administrative review of the antidumping duty order on stainless steel bar from India. Pursuant to this request, Commerce initiated the second administrative review on the subject merchandise covering the period February 1, 1996, through

January 31, 1997. Plaintiff submitted its first questionnaire response to Commerce on June 4, 1997.

In this submission, plaintiff informed Commerce that the enclosed home market sales listing data

included a pre-sale warehouse expense, set forth in the data field DISWARH. On September 9,

1997, plaintiff submitted, in response to a supplemental questionnaire, a new home sales market

listing. As in the original listing, the September 9 home market sales listing also included a pre-sale

warehouse expense, which was again listed in the data field DISWARH.

On September 22, 1997, plaintiff issued another submission to Commerce to correct errors

in prior submissions. As part of this September 22 submission, plaintiff stated that in previous

representations to Commerce, plaintiff had incorrectly reported that the data field DISWARH

contained a pre-sale warehouse expense. Plaintiff explained:

> **[**[D]ata in th[e] column DISWARH was incorrect, the correct narrative is as under.
>
> We do not incur any consignment or warehousing expenses. The consignment agent incurs all these expenses, which are reimbursed to him as an agency commission fixed as per the agreement. The consignment agent sells the material on our behalf to the customers by charging a price per metric tonne and surcharge towards the consignment expenses. As such, in the column 'GRSUPRH,' we have reported the basic price per unit plus consignment surcharge per unit. The supporting information for this data is the invoice raised to the customer, which is accounted by us.
>
> . . . [W]e have now corrected the data to show zero expenses in all the data files in the column DISWARH. *The original data in this column showed a surcharge amount which is now added to the originally indicated gross unit price.* Accordingly, the new revised gross unit price is indicated in the column GRSUPRH.**]**

Mukand's Sept. 22, 1997 Submission to Commerce at 4 (emphasis added). "Essentially, [plaintiff]

indicated that it mistakenly categorized warehousing as an expense rather than as a part of the gross

unit price. To correct this mistake, [plaintiff] stated that, it added the amount incorrectly categorized

as a warehousing expense to gross unit price." Mem. of the U.S. in Opp'n to the Pl.'s Mot. for J.

Upon the Agency R. at 5 ("Def.'s Br.").

Commerce conducted a verification of plaintiff's questionnaire responses from September

29, 1997 to October 3, 1997. At the start of verification, plaintiff informed Commerce that due to

computer programming errors, the warehouse surcharge, first incorrectly reported as a warehouse

expense in the DISWARH field, had not been added to the gross unit price reported in the

GRUSPRH field.

> As noted in September 22 submission [i]n some of the consignment
> sales in Home Market an amount was shown in the DISWARH field.
> This expense was actually not incurred. (All the warehouse expenses
> are incurred by the Consignment Agent and Mukand's commission
> covers those). In fact this was a surcharge applied to the price
> charged to the customer. As such the correct unit price for these
> sales, shown in the field 'GRSUPRH' should be corrected to show
> this additional surcharge. *Essentially, the figures in the DISWARH in
> the September 9 submission should have been added to the figure in
> GRUSPRH in the September 22 submission.* We now request
> correction of these prices and rectification of some data entry errors
> in these two fields as shown in Annexure 2.

Ex. 1 to the Verification Report of Mukand Ltd. Regarding the Second Administrative Review of

Stainless Steel Bar from India (November 20, 1997) ("Verification Exhibit 1") (emphasis added).

Plaintiff submitted the corrected data to Commerce on October 8, 1997. The data listed within the

October 8 submission for the GRSUPRH field included data which was previously contained in

plaintiff's September 9 DISWARH field submission for all reported sales except the sales at issue.

Commerce subsequently learned, during the calculation of the preliminary results, that for

some of the sales at issue Commerce had conducted home market sales traces during verification. *See Stainless Steel Bar From India:  Preliminary Results of Antidumping Duty Administrative Review and Partial Termination of Administrative Review*, 62 Fed. Reg. 60,482 (November 10, 1997) ("Preliminary Results"). Commerce then determined that for the sales at issue, "including the [sales] examined by Commerce at verification, Mukand had failed to add the amount of the pre-sale warehousing surcharge listed in the DISWARH field of Mukand's September 9, 1997 questionnaire response, to the gross unit home market price."  Def.'s Br. at 6.  Based upon this determination, Commerce adjusted the reported gross unit price for the sales at issue by adding the data set forth in the September 9 DISWARH field to the gross price listed in the October 8 GRSUPRH field as a warehouse surcharge.

On December 11, 1997, plaintiff submitted a case brief challenging Commerce's decision to add a warehouse surcharge to the sales at issue.  Plaintiff argued that:

> for sales on or after November 1, 1996 the . . . per MT warehouse surcharges were *not* separately indicated on the sales invoice. Rather, such warehouse charges were already *included* directly in the price for stainless steel bar reported in the sales invoice.  The warehouse surcharge thus did *not* have to be added to the invoice sales prices shown in the field GRSUPRH.
>
> In other words, the prices reported under GRSUPRH for sales on and after November 1, 1996 were already originally correctly reported.

Case Br. of Mukand Commenting On the Prelim. Decision at 3 (December 12, 1997) ("Pl.'s Admin. Case Br.") (emphasis original).

Commerce issued the *Final Results* on March 10, 1998, and, consistent with the *Preliminary Results*, included a warehouse surcharge to the gross unit price for the sales at issue.  The *Final*

*Results* concluded that: (1) plaintiff's case brief explained *for the first time* that plaintiff had changed its invoicing policy for sales after November 1, 1996; (2) plaintiff's case brief comments were inconsistent with plaintiff's representations at verification; and (3) plaintiff's identification of the new invoice policy at such a late stage of the review did not give Commerce the opportunity to analyze and verify plaintiff's new position. *Final Results*, 63 Fed. Reg. at 13,623-24.

### *Standard of Review*

Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(b)(1) (1995), sets forth the standard of review for antidumping duty administrative reviews. Section 1516a(b)(1) states that "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1) (1995). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, *Ceramica Regiomontana, S.A. v. United States*, 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). In performing its substantial evidence analysis, the Court must:

> consider both sides of the record. It is not sufficient to examine merely the evidence that sustains the agency's conclusion. . . . In other words, it is not enough that the evidence supporting the agency decision is 'substantial' when considered by itself. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Melex USA, Inc. v. United States*, 19 CIT 1130, 1132, 899 F. Supp. 632, 635 (1995) (citing

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 478, 488, 71 S.Ct. 456, 459, 464, 95 L.Ed. 456 (1951)).

### *Discussion*

Plaintiff's primary argument is that Commerce's decision to increase reported prices for the sales at issue to account for a warehouse surcharge does not comport with record evidence. Plaintiff argues that based upon Commerce's verification of some of these sales, Commerce should have concluded that there were no warehouse surcharges for these sales. In reply, Commerce and defendant-intervenors contend that: (1) Commerce's decision to increase reported prices for these sales to account for warehouse surcharges was reasonable; and (2) Commerce properly disregarded plaintiff's factual statements on invoicing policy as untimely.

The Court initially determines that Commerce's decision to add warehousing surcharges to the sales at issue when calculating the *Preliminary Results* was reasonable. At the start of verification, plaintiff informed Commerce that "[e]ssentially, the figures in DISWARH in the September 9 submission should have been added to the figure in GRSUPRH in the September 22 submission." Verification Exhibit 1. The language used by plaintiff at this point in the proceeding is instrumental because, as defendant-intervenors point out, plaintiff's statements created the impression that warehousing surcharges were incurred for *all* sales listing a value in the DISWARH field. Commerce then verified the sales at issue based upon the assumption that plaintiff would subsequently transfer the data listed in *all* the DISWARH fields to each corresponding GRSUPRH field when plaintiff submitted its corrected post-verification data. However, plaintiff's post-verification submission did not include the transfer of DISWARH data to the GRSUPRH field for

the sales at issue. Finding that plaintiff had committed yet another clerical error for these sales, Commerce adjusted reported prices for these sales by adding the warehouse surcharge originally listed in the DISWARH field to the GRSUPRH field. The Court finds that this determination was reasonable and now turns to the reasonableness of Commerce's decision to disregard plaintiff's post-verification case brief statements.

Plaintiff contends that its case brief statements on sales invoice policy, submitted after Commerce's deadline for the submission of factual information, should not be disregarded because the statements are not factual information. Rather, plaintiff claims, the statements are citations to record evidence. Reply Br. of Pl. Mukand to the Opp'n to Pl.'s Mot. for J. on the Agency R. Pursuant to Rule 56.2 at 10 ("Pl.'s Reply Br."). In reply, both defendant and defendant-intervenors argue that plaintiff's sales invoice policy statements are factual information, submitted after Commerce's statutory deadline, and, therefore, properly disregarded by Commerce.

The Court first holds that plaintiff's case brief statements are "factual information" within the meaning of 19 C.F.R. §§ 353.2(g) & 353.31(a)(ii) (1995). *See AL Tech Specialty Steel Corp. v. United States*, __ CIT __, Slip Op. 98-136 (September 24, 1998). As set forth in § 353.2(g), factual information includes "statements of fact in support of allegations." 19 C.F.R. § 353.2(g) (1995). Plaintiff's case brief statements fall within this definition. The statements were offered by plaintiff for the sole purpose of supporting plaintiff's allegation that warehouse surcharges were not incurred for the sales at issue. If the Court were to sustain plaintiff's argument, Commerce would subsequently be required to consider any statement submitted by a party to the proceeding, regardless of when the statement was submitted, as long as the statement referred to facts contained

within the administrative record at the time of Commerce's factual information deadline.  It is obvious to this Court that such a requirement would be absurd.  And having found that plaintiff's case brief statements were factual information within the meaning of 19 C.F.R. §§ 353.2(g)  & 353.31(a)(ii), the Court must now address whether Commerce's decision to disregard the statements, based upon plaintiff's failure to meet the regulatory deadline, was reasonable.

"In general, this Court has upheld the ITA's rejection of untimely submitted factual information pursuant to 19 C.F.R. § 353.31(a)." *NSK Ltd. v. United States*, 16 CIT 745, 749, 798 F. Supp. 721, 725 (1992) (citation omitted).  As in this case, *NSK Ltd.* involved the submission of factual information at the case brief stage of an antidumping proceeding.  The *NSK Ltd.* Court held that "[t]he submission of detailed factual information at the prehearing brief stage of an administrative review is clearly untimely under any circumstances." *NSK Ltd.* at 16 CIT 749-50, 798 F. Supp. 725.  This Court has also held that requested factual information must be submitted "within a period that allows Commerce sufficient time for adequate analysis and comment while still meeting statutory deadlines." *Ansaldo Componenti, S.p.A. v. United States*, __ CIT __, __, 628 F. Supp. 198, 205 (1986).  In this administrative review, the Court finds that it was incumbent upon plaintiff to create an adequate record to assist Commerce's determinations.  *See NSK, Ltd. v. United States*, __ CIT __, 919 F. Supp. 442 (1996).  For as the court recognized in *Sugiyama Chain Co., Ltd. v. United States*, 16 CIT 526, 530-31, 797 F. Supp. 989, 994 (1992), respondents are in the best position to organize their sales data and submit this information to Commerce in a timely manner.

As a last resort, plaintiff argues that even if the case brief statements are determined to be factual statements within the meaning of §§ 353.2(g) & 353.31(a)(ii), plaintiff should not be

penalized for "not having submitted information during verification that [plaintiff] was not then aware it needed to provide." Pl.'s Reply Br. at 11 (referencing *AK Steel Corp. v. United States*, __ CIT __, Slip Op. 98-159 (Nov. 23, 1998)). The Court finds, however, that plaintiff should have been aware that a change in invoice policy would be considered requisite factual information subject to verification. Plaintiff's statements leading up to and including verification created the impression that data originally listed in the DISWARH field was a warehouse surcharge that should have been initially listed in the GRSUPRH field for *all* reported sales. If this impression was incorrect, plaintiff was solely responsible for correcting, in a timely manner, the error or misinterpretation it alone had created. The Court finds, therefore, that Commerce's decision to disregard plaintiff's case brief statements was reasonable and based upon substantial evidence. The *Final Results* are affirmed.

### *Conclusion*

Therefore, upon reading plaintiff's motion for judgment upon the agency record, defendant, and defendant-intervenors' response thereto, and upon due consideration of all other papers and proceedings had herein, the Court hereby affirms the *Final Results* in their entirety.

_____
R. KENTON MUSGRAVE
JUDGE

Dated:  April 9, 1999
        New York, New York